BACOT ET AL. *v.* BOARD OF SUP'RS OF HINDS COUNTY.

[86 South. 765, No. 21693.]

1. COUNTIES. *Legislature may authorize and validate issuance of bonds.*

   The legislature has full power, within constitutional limits, to provide both for the issuance of bonds by public corporations and for the validation of bonds issued by such corporations after their issuance.

2. CONSTITUTIONAL LAW. *Powers of state's bond attorney not judicial.*
   The powers conferred upon the state's bond attorney by chapter 28, Laws Ex. Sess. 1917, are not judicial.

3. STATES. *Powers of state's bond attorney not such as must be exericsed by attorney-general or district attorneys.*
   The powers conferred upon the state's bond attorney by chapter 28, Laws Ex. Sess. 1917, are not such as must be exercised only by the attorney-general or the district attorneys.

4. CONSTITUTIONAL LAW. *Legislature may add to jurisdiction of chancery court.*
   The legislature may confer upon the chancery court a jurisdiction which prior thereto was not possessed by any court, although not embraced within the sections of the Constitution by which the jurisdiction of that court is prescribed.

5. HIGHWAYS. *Statute exempting road districts from taxation to pay road bonds repealed by later enactment.*
   The provision of chapter 277, Laws 1920, providing for the exemption of separate road districts from taxation for the payment of county road bonds, being in conflict with the provision of chapter 207, Laws 1920, a later enactment of the legislature, that such bonds, when issued, shall constitute a lien on and be paid by the taxation of all the taxable property in the county, is repealed thereby.

APPEAL from chancery court of Hinds county.

HON. V. J. STRICKER, Chancellor.

Proceeding between B. F. Bacot and others and board of supervisors of Hinds county. Decree for the latter, and the former appeal. Affirmed.

This is an appeal by an intervening taxpayer from a decree of the court below in a proceeding authorized by chapter 28, Laws Ex. Sess. 1917, validating an issue of one million dollars of county road bonds authorized by a majority of the qualified electors of Hinds county at an election held on October 1, 1920. The proceedings for the issuance of these bonds were in accordance with section 331, Code of 1906, and chapter 207, Laws of 1920.

The bonds proposed to be issued are intended to be paid by taxation of all the taxable property in the county. Two

special road bond districts in Hinds county have already issued road bonds under the provisions of chapter 176, Laws of 1914, which now appears as chapter 277, Laws of 1920, approved March 26, 1920. A majority of the qualified electors in each of these districts voted against the issuance of the bonds. Section 11, chapter 277, Laws of 1920, contains the following provision:

"But the districts separately taxed to pay principal and interest on bonds for building roads made of stone, gravel, chert, slag, or sand clay, or of a combination of such material, or any material equally durable, shall not be subject to an additional tax for building such roads in other parts of the county or for the payment of principal and interest on any county bonds hereafter issued for road purposes without the consent of a majority of the qualified electors of said district voting in an election held for that purpose."

Chapter 28, Laws Ex. Sess. 1917, provides for the appointment of a state's bond attorney, and that:

"Sec. 2.   When any county, municipality, school district, road district, drainage district, levee district, sea wall district, or any other district or subdivision, authorized to issue bonds shall take steps to issue bonds for any purpose whatever, the officer or officers of such county, municipality, or district, charged by law with the custody of the records of same, shall, if the board issuing same shall so determine by order entered on its minutes, transmit to said bond attorney a certified copy of all legal papers pertaining to the issuance of said proposed bonds including transcripts of records and ordinances, proof of publication and tabulation of vote, if any, and any other fact pertaining to said issuance, and said bond attorney shall thereupon as expeditiously as possible, examine into said legal papers and pass upon the sufficiency thereof, and render an opinion in writing, addressed to the board proposing to issue said bonds, as to the validity of same, and if any further action on the part of said board is necessary, or any further data is desired, he shall indicate what

is necessary to be done, in the premises in order to make said bonds legal, valid and binding, and when in his opinion all necessary legal steps have been taken to make the said bond issue legal, valid and binding, he shall render a written opinion to that effect, and shall transmit all legal papers together with his opinion to the clerk of the chancery court of the county in which the district or municipality proposing to issue said bonds is situated, or if said district embraces more than one county, then to the chancery clerk of any one of said counties, and the chancery clerk shall file the same and enter same on the docket of the chancery court, and shall promptly notify the chancellor of the district in writing that said papers are on file and the cause has been docketed, and the chancellor shall then notify the chancery clerk to set the matter for hearing at some future date, not less than ten days thereafter, and the clerk shall give notice by making at least one publication in some paper published in the county where the case is docketed, addressed to the taxpayers of the county, municipality or district, proposing to issue said bonds advising that the matter will be heard on the day named.

"If on the day set for hearing there is no objection filed by any taxpayer to the issuance of said bonds, a decree approving the validity of same shall be entered by the chancellor, and if the chancellor be not present, the clerk shall forward him the decree prepared by the state's bond attorney for his signature, and shall enter the said decree upon his minutes in vacation.

"If at the hearing any taxpayer of the county, municipality or district appears and objects to the issuance of said bonds, then the chancellor or the chancery clerk, if the chancellor be not present, shall set the case over for another day, convenient to the chancellor, not less than ten days thereafter, and shall notify the bond attorney to appear and attend the hearing. And on the hearing the chancellor may hear additional evidence and inquire into the validity of the bonds proposed to be issued, and enter a decree in accordance with his finding.

"If either party shall be dissatisfied with the decree of the chancellor an appeal shall be granted as in other cases, but such appeal must be requested at the time the chancellor enters his decree, or within ten days thereafter. The chancery clerk shall certify the record to the supreme court as in other cases, and the supreme court shall hear the case as a preference case.

"Sec. 3. If the chancellor shall enter a decree confirming and validating said bonds and there shall be no appeal by either party from said decree, or if on appeal the supreme court enters its decree confirming and validating said bonds, the validity of said bonds so issued shall be forever conclusive against the county, municipality or district issuing same, and the validity of said bonds shall never be called in question in any court in this state."

*M. Ney Williams,* for appellants.

This is a suit brought by the appellants herein, intervening taxpayers of Hinds county, Mississippi, contesting the law under which Hinds county, Mississippi, issued one million dollars in bonds for the purpose of constructing bridges and improved public roads in said county. The statement of the facts contained in the brief of Messrs. Watkins & Watkins and Eager, attorneys for appellee is true in the most minute detail and admitted by appellants to be the facts of the case. It seems that there is only one legal point involved in this case, and that is whether or not chapter 207 of the Laws of 1920 repeals section 11, chapter 277 of the Laws of 1920.

Section 11, chapter 277 of the Laws of 1920, approved March 26, 1920, provides as follows: "But the districts separately taxed to pay principal and interest on bonds for building roads made of stone, gravel, or any material equally durable, shall not be subject to an additional tax for building such roads in other parts of the county, or for the payment of principal and interests on any county bonds hereafter issued for road purposes, without the

consent of a majority of the qualified electors of said district voting in an election held for that purpose.

Section 3, chapter 207 of the Laws of 1920, approved April 2, 1920, provides as follows: "Should the election provided for by section 2 of this act result in favor of the proposed bond issue, by a majority of those voting in said election voting in favor of the issuance of said bonds, the board of supervisors may issue said bonds either in whole or in part at such time within one year after the date of such election as they may deem best."

Appellants, as citizens and taxpayers of Hinds county, Mississippi, filed their objections to the issuance of the said one million dollars in bonds before the chancery court of Hinds county, and set forth the fact that the Dry Grove voting precinct, and the Edwards Voting precinct both of said voting precincts being in separate gravel road districts and said separate gravel road districts being established and operating under existing road laws made by the legislature of the State of Mississippi prior to the 1920 session of the legislature, did not cast a majority vote for the said bond issue, and that said election held in Hinds county, Mississippi, on October 1st, 1920, was illegal, null and void for the reason that the said above Dry Grove and Edwards precincts did not give a majority for the bond issue, the vote at each precinct being as follows: Edwards for the bond issue twelve votes, against the bond issue, forty-eight votes; Dry Grove, for the bond issue, seven votes, against the bond issue, seven votes. It is clearly seen from the above results of the said election that the bond issue failed to carry in these two precincts. The Edwards gravel road district, embraces a part but not all of the Edwards voting precinct, and the Dry Grove gravel road district (embraces a part but not all of the Dry Grove voting precinct) and these two gravel road districts have been heretofore established, the roads therein built, and the taxpayers are now taxed for the construction and maintenance of the said roads.

The idea of road building was born in the minds of our legislature many years ago, and from session to session our lawmakers have undertaken by amendments and otherwise to devise a more perfect system of building good roads, and as a result we have more ways of building and working roads, than is given us by laws on any other subject.

Good roads legislation has been almost continuous since 1906 and the last two statutes passed by the legislature of 1920 is but a continuation of the road laws of this state.

Section 11, chapter 277, of the Laws of 1920, approved March 26, 1920, and section 23, chapter 207 of the Laws of 1920, approved April 2, 1920, are in dire conflict, and it is earnestly contended by counsel for appellee that chapter 207 of the Laws of 1920, approved April 2, 1920, repeals section 11, chapter 277, of the laws of 1920, approved March 26, 1920. And that if a majority of those voting in an election on a bond issue vote for the issue, that the issue carries, notwithstanding the fact that two or more separate gravel road districts fail to give a majority for the bond issue.

We respectfully state to the court that in our opinion section 11, chapter 277 of the Laws of 1920, approved March 26, 1920, is not repealed by section 3, chapter 207 of the Laws of 1920, approved April 2, 1920, and that the election held in Hinds county, Mississippi, on October 1, 1920, for the purpose of voting said one million dollars bond issue, is illegal and void and without force and effect, for the reason that the said proposed bond issue did not receive a majority of the votes cast at the Dry Grove and Edwards precincts (which two precincts embraces a part but not all of the gravel road districts known as the Dry Grove gravel road district and the Edwards gravel road district).

The constitutionality of chapter 28, Laws of 1917, providing for the validation of certain bonds, and the creation of the office of state's bond attorney is attacked in the objections of appellants, on the ground that:

1. The said act creates the office of State's bond attorney, and confers upon him *quasi*-judicial powers in this that he is required to render an opinion on the validity of a bond issue, and if in his opinion the bond issue is valid he is required by the act to prepare a decree validating said bonds, which decree is final and must be signed by the chancellor without further judicial investigation, unless objections are filed by the taxpayers to the validation of said bonds on or before the time fixed by the chancellor for hearing the same, from which decree no right of appeal is given."

2. "Said act of said chapter 28, Laws of 1917, is further unconstitutional in this that it undertakes to confer upon the chancery court jurisdiction in a matter not embraced in sections 159, 160 and 161, of the constitution, and in a matter in which jurisdiction is conferred upon the circuit court on appeal or *certiorari* from the judgment of the board of supervisors."

3. "Said chapter 28, Laws of 1917, is further unconstitutional in that it confers upon the state's bond attorney powers and duties which properly pertains to the attorney general, district attorney and county attorney, and attorneys for the boards of supervisors.

The question of the constitutionality of this act was brought into this case for the purpose of having the court pass upon the constitutionality of the act, so that this point may be forever settled.

The law on this point is very ably discussed in the brief of Hon. J. B. Harris, *amicus curiae*, to which I respectfully call the attention of the court.

I submit to the court that section 11 of chapter 277 of the Laws of 1920, applies to the case at bar and that the same is not repealed by chapter 207 of the Laws of 1920, and that this case should be reversed and remanded.

*J. B. Harris,* for appellant.

The questions presented by the record in this case are important ones. The main question, as to the power of the chancellor in the hearing of objections to the valida-

tion proceedings under the act of September 27, 1917, chapter 28. In other words, is a judgment of a board of supervisors of the same binding and conclusive effect in a validation proceeding under said act, as it would be in any other proceeding which might be attacked. Is the judgment of a board of supervisors in a matter over which it has jurisdiction subject to collateral attack, and to review by the chancellor in validation proceedings?

Was it the purpose of the legislature to confer upon the chancellor, in validation proceedings, *quasi*-appellate jurisdiction and the power to review and open up the judgment of a board of supervisors to the same extent that the same might be reviewed on appeal to the circuit court?

It is settled beyond any question in this court that the judgment of a board of supervisors in matters over which they have jurisdiction are conclusive and not subject to collateral attack, that the remedy, if any is, by direct appeal to the circuit court as provided by the statute, and that remedy is exclusive. See *Wolford* v. *Williams,* 110 Miss. 637; *Johnson* v. *Board of Supervisors,* 74 So. 321; *Hinton* v. *Perry County,* 84 So. 548.

It was settled by this court in the case of *Thomas* v. *Lee County,* 53 So. 585, 98 Miss. 232, and in the case of *Dean* v. *Desoto County,* 82 So., that the filing of the petition required by the statute, by the qualified electors for the establishment of a road district and the issuance of bonds, conferred upon the board of supervisors jurisdiction of the matter.

In the case at bar, a petition signed by twenty per cent of the qualified electors of the Edinburg road district was filed with the board of supervisors, under the provisions of chapter 176 of the Acts of 1914, asking for the establishment of the Edinburg road district and for the issuance of bonds.

The board of supervisors in pursuance with the requirements of the act caused notice to be published as required by law setting forth the purpose for which the bonds were to be issued, and describing the road district for which

they were to be issued, and its purpose to issue bonds on a certain day therein named, unless a counter-petition as required by law was filed, within the three weeks next preceding the day fixed by the notice on which the board would be authorized to act. It appears that a counter-petition was filed, or what is purported to be a counter-petition but upon canvassing the petition it was found to be irregular and illegal in several respects, in addition to its not being filed in time and the board of supervisors proposed to reject the petition, but entered an order allowing the petition to be withdrawn and giving the counter-petitioners thirty days within which to file a proper petition. See page 27 of the record. The record, however, recites that after this order was made the board of supervisors were advised that they had no authority to extend the time for filing the counter-petition, no legal petition being on file at the time required by law. See page 36 of the record, and the board then proceeded to order an issuance of bonds in the sum of twenty thousand dollars as recommended by the road commissioners, and the said bonds were issued and advertised for sale and bid in by the Merchant's Bank & Trust Company of Jackson, Mississippi. It does not appear, however, that the bonds have been delivered. The proceedings in reference to the issuance of the bonds were instituted in April, 1917, an order authorizing the bonds was made in June, 1917, and the bonds were offered for sale and bid in, as above stated on December 3, 1917.

Validation proceedings were instituted under the provisions of the Act of 1917, the matter having been submitted for validation to Mr. Thomas M. Owen, who was then state's bond attorney, who rendered an opinion May 15, 1918, that the bonds were legal, valid and binding. See pages 12 and 13 of the record.

The matter was set for hearing before the chancellor for June 28, 1918, and on that day three taxpayers filed objections to the bonds in general terms. See page 3 of the record. Mr. Owen, state's bond attorney, made a mo-

tion to strike out these objections from the file upon the
ground set forth in a motion which appears on page 4 of
the transcript.   The objectors afterwards on July 11,
1918, filed specific objections, see pages 5 to 9 of the record,
at which time the chancellor proceeded to hear these ob-
jections and take testimony.

The court will see from reading the objections and the
testimony that the whole contention was an attack upon
the judgment rendered by the board of supervisors au-
thorizing the issuance of the bonds, upon the ground that
the board of supervisors erred in its judgment as its power
to extend the time for the filing of a counter-petition.
There is nothing else in the controversy.   There is a
charge of fraud in the objections, but this is general and
not sustained by the record.

I insist that whether the board of supervisors were right
or wrong in its conclusion, the matter could not be in-
quired into in the validation proceedings, that the remedy
for the objectors was by an appeal to the circuit court,
and that was the exclusive remedy.   The transcript shows
page 49 of the record, that no appeal was taken from the
judgment of the board of supervisors establishing a road
district and authorizing the issuance of bonds, and that
no suit or action of any kind is pending against the es-
tablishment of the road district or the issuance of the
bonds, and that no action or suit was threatened.

The only clause in the Act of 1917 in reference to the
functions of the chancellor is contained in the next to the
last paragraph of section 2, and is in these words: "And
on the hearing the chancellor may hear additional evidence
and inquire into the validity of the bonds proposed to be
issued and enter a decree in accordance with his findings."
This language is somewhat vague, and the question now is,
is that broad enough and sufficiently clear as to confer
upon the chancellor the power to open up the whole pro-
ceeding and set aside the judgment of the board of super-
visors, if in his own opinion he should think that the board
of supervisors erred in the conclusion which they have

reached, the question not being a jurisdictional one or one of fraud or of any excess of power in violation of any positive statute.

In other words, does the language, "hear additional evidence and inquire into the validity of the bonds to be issued," carry with it, or embrace and confer upon the chancellor the power to set aside the judgment of the board of supervisors otherwise conclusive and not subject to collateral attack, and try the whole question *de novo.* Have judgments of boards of supervisors no conclusive effect in validation proceedings under the Act of 1917- The circuit court has jurisdiction of an appeal to try a matter arising before the board of supervisors *de novo* and enter such judgment as the board of supervisors should have entered. I submit that the language quoted from the Acts of 1917 falls very short of conferring any such power upon the chancellor. There are many matters affecting the validity of bond issues which could be dealt with by the chancellor which could not be cured by any judgment of the board of supervisors as for instance questions going to the jurisdiction. If proceeding under the Acts of 1914, chapter 176, the board of supervisors should have undertaken to issue the bonds without a petition on the part of the electors, this would be a jurisdictional matter which the chancellor could consider. If the notice required by the statute was not given, and these matters do not appear upon the record, as they must affirmatively appear, the matter could be considered by the chancellor. If the maturity of the bonds was not as prescribed by the act, it is a matter which could be passed upon by the chancellor. Because these being positive statutory requirements, not confided in any way to the judgment or discretion of the board, are all matters which could be inquired into by the chancellor. If in case of an election there was actual fraud vitiating the election, or the record shows that no election was held where an election is required, these matters being positive statutory requirements could not be dispensed with by the board of supervisors, and any

issue of bonds in violation thereof would be invalid. This matter, however, of the sufficiency of the petition and counter-petition is a matter for the board of supervisors to determine, and as to those matters its judgment is conclusive and can only be inquired into by direct appeal to the circuit court and would not be subject to collateral attack.

At all events it is highly important that the court should pass upon these questions and determine now whether the power has been conferred upon the chancellor to review a judgment of a board of supervisors in matters within its jurisdiction, however erroneous that judgment may be.

It seems to be settled that statutes like the one in question conferring special powers upon a court must be strictly construed and nothing is to be presumed that is not expressly given. The rule is thus laid down in Lewis Sutherland Statutory Construction, vol. 2, section 564: "Where special powers are conferred upon a court either of otherwise, general or limited jurisdiction it is rigorously restricted to those granted, and the grant itself is strictly construed; the jurisdictional facts must appear on the face of the proceedings. The court can take no additional power from its general jurisdiction. In the exercise of such special powers it is precisely limited to those plainly delegated. Nothing is to be presumed that is not expressly given.

I think, therefore, it could not be presumed that the legislature intended to confer upon the chancellor the power to review the judgments of boards of supervisors in matters within their jurisdicton or power to hear or determine matters *de novo,* or to exercise powers of an appellate court. The power of the chancellor, I take it, is to examine the transcript of the record presented, which of course must show affirmatively all of the jurisdictional facts and also it must appear that the provisions of no positive statutory requirements as to which the board of

supervisors had no sort of discretion or power to adjudicate has been violated.

We have cited cases above in which this court has held that the judgments of boards of supervisors in matters within their jurisdiction have all the force and effect of judgments of courts of general jurisdiction and can only be attacked upon the same ground and for the same reasons such judgments could be attacked. No one could be hurt by the adoption of the view which I am here advancing, for the reason that the remedy by appeal is speedy, adequate and complete.

It is suggested by counsel for the appellee that the institution of validation proceedings confer jurisdiction upon the chancery court to open up the whole subject. Would the court hold that if the board of supervisors should enter an order referring the matter to the state's bond attorney for validation before time for taking an appeal from its order authorizing the issuance of bonds had expired would cut off the right of appeal to the circuit court as provided by the statute? Manifestly not. It is also quite manifest that an appeal to the circuit court taken properly would have the effect of cutting off validation proceedings until the matter had been settled in the circuit court or at least on appeal. Jurisdiction to try the matter *de novo* has been expressly conferred upon the circuit court, no such jurisdiction is conferred upon the chancery court, as we have shown above. Doubtless such jurisdiction might be conferred upon the chancery court, but it would have to be done by some express and clear statutory provision.

As I understand it, the Act of 1917 was intended to afford a speedy procedure for the validation of bonds, which would cut off the flood of litigation which has heretofore arisen in attacks upon bonds of various kinds involving expensive protracted litigation.

Another question presented by the record in this; the bonds in this case were authorized prior to the passage of the Act of 1918, chapter 209. No election was held.

The whole matter had been consummated except the actual delivery of the bonds, the bonds were offered for sale and bid in by a proposed purchaser. That was done December 3, 1917, and the offer was accepted by the board. The only thing in the way of the delivery of the bonds was the condition that the bonds should be approved by Mr. J. C. Thompson, a foreign bond attorney. It does not appear from the transcript what action Mr. Thompson took in reference to the bonds, or whether they were actually submited to him for approval. In this state of case, the bonds not having been actually delivered, is it necessary that an election be held under the provisions of section 3 of the Acts of 1918, chapter 209?

In the case of the *Board of Supervisors of Madison County* v. *Howard,* 80 So. 524, the point was made that the Act of 1918 did not apply to cases where the road district had been established and was in the course of construction at the time of the passage of the act. The court, however, without passing upon that question specifically in effect decided that the Act of 1918 did apply. The facts in that case, however, are different from the facts in the case at bar as the court will readily see. The entire issue of bonds authorized in the first instance had been exhausted, and the amount of bonds issued in the first instance was up to the limit allowed by law based upon the assessment of the property in the district at that time. The bonds in question were an additional issue necessary to complete the work and were based on an increased valuation of the property in the district at the time the subsequent issue was made.

The case at bar is entirely different, the bonds have been authorized; they are within the legal limit, and it is not a question of an additional bond issue, and everything had been consummated prior to the passage of the Act of 1918 except the delivery of the bonds. I take it that if in a proceeding under the Act of 1914 an issue of one hundred and fifty thousand dollar bonds, were authorized and the board of supervisors proceeded under the authority of the

act, section 2 had issued and sold one hundred thousand dollars of the bonds, the court would not say that they could not issue and sell the remaining fifty thousand dollars without an election after the passage of the Act of 1918.

Another question is presented and that is this: Should the motion of the bond attorney to strike out the original objections have been sustained; in other words, is it sufficient to meet the requirements of the act that mere general objections should be filed without stating any ground for the objections? Is is not necessary for the objector to file specific objections within the time fixed by the statute for filing objections. The specific objections were not filed until thirty days after the date fixed by the chancellor for filing objections.

I respectfully request the court to pass upon all of the questions involved, as they are important, and this is the first time the Act of 1917 has come before the court for construction or interpretation.

*J. N. Flowers, Amicus Curiae.*

Chapter 2, Laws of 1917, is evidence of progress. It provides a way to forestall controversies. Before the bonds of a district are sold, and before the rights of confiding investors have become involved, and before taxes to pay the bonds are levied or paid, it may be finally ascertained, through the instrumentality of the bond attorney, whether the bonds proposed are valid. A disinterested party is authorized to institute a suit, make up the issues, summon the parties in interest, and cause the issues to be decided. The plan of the statute advances the cause of prevention of litigation—a cause being advocated by public spirited lawyers. The decree of the chancellor is in the nature of a declaratory judgment. By it the rights of the parties in interest are adjudged before wrongs are committed, or rights are invaded or property jeopardized. The authors of the statute perhaps, did not have in mind the

much discussed declaratory judgment. By it the rights of the parties in interest are adjudged before wrongs are committed or rights are invaded or property jeopardized. The authors of the statute, perhaps, did not have in mind the much discussed declaratory judgment, but the subject dealt with furnishes a model instance for the profitable use of the declaratory judgment, and the plan makes it easy and inexpensive to settle in advance, by judicial ascertainment, the rights of the taxpayers of the district, and of the investors. If the bonds are offered on the market there may be a question as to their validity. The sale of them may be prejudiced by real or imaginary defects or irregularities in the proceedings. After the bonds are sold and delivered there may be resistance to the payment of them, or the collection of the taxes with which to pay them may be resisted. Contracts to take the bonds may be breached because of supposed defects, and contracts for the public work contemplated may be the basis of law suits growing out of the failure to realize promptly upon the bonds. All such differences give rise to controversies which get into the courts. It is the purpose of this statute to prevent and settle all these controversies before the investor puts his money into the bonds, and before the tax is levied or collected, and before the contract for the public work is let. The use of it must inure to the benefit of the district, the taxpayer, and the bond buyer. The plan is brief, the expense is small, and the decree of the chancellor is final.

The proceeding provided by this statute is analogous, remotely, to suits to remove clouds from titles which may be entertained by our chancery courts. It is also analogous to petitions in administration proceedings for the construction of wills, and in administration proceedings, especially, the court is frequently called upon to construe written instruments other than wills. And we understand that in England this jurisdiction of the chancery court is extended to numerous cases of a character with which our courts are not accustomed to deal. But it is true that in

several states we are undertaking to extend the practice of having potential controversies settled before they actually arise—this in furtherance of a general purpose to reduce the number of cases in courts and save the expense and waste of litigation.

The act does not create a new court, nor does it confer judicial power upon the bond attorney. Any subdivision of the state or county, having the power under certain circumstances to issue bonds, and having gone through proceedings looking to that end, may consult the official bond attorney and advise him what has been done up to date. The officials in charge of the proposed bond issue furnish the bond attorney certified copies of all the legal papers pertaining to the proposed bond issue, and they may request his opinion as to the regularity of the proceedings, and the bond attorney must render his opinion in writing. If he finds that there are fatal irregularities in the proceedings, it is his duty to make suggestions as to what additional steps shall be taken. And after the official in charge of the proceedings have done all that the bond attorney requires so that the bond attorney may be able to render his opinion to the effect that the bonds will be valid, he prepares his opinion to that effect and sends it with the certified transcript to the chancery clerk of the county in which the district is, and then the case is docketed and the chancellor of the district is notified by the clerk. The chancellor then fixes a day for the hearing, and publication is made, addressed to the taxpayers of the district, advising them of the day on which the case is to be heard. And until the day fixed for the hearing, any taxpayer has the right to present any objections he may have. If no one objects, then the chancellor makes his decree validating the bonds. This decree is prepared by the bond attorney but it has no force until it is signed by the chancellor. The bond attorney is given no power to sign a decree or to sit in final judgment. His opinion is presumed to be correct unless some fault is found with it, or objection made to it by the parties in interest. But it is a life-

less thing until the decree signed by the chancellor puts
it into effect. The officers of the district contemplating
the bond issue start the machinery in motion by making
their request of the bond attorney, and then the latter
takes it up and carries it on to final decree. Not only is
no judicial power given the bond attorney, but it is recog-
nized that this power must be exercised by the chancellor,
and whatever the bond attorney does is subject to the ap-
proval of the chancellor.

The plan provided by the statute contemplates that who-
ever has any objection to the proposed bond issue shall
come forward and present his objection. He is notified
that there is on file with the chancery clerk an opinion
rendered by the bond attorney that the proposed bond
issue is now in shape to be made; that on a day named he
may have an opportunity to be heard, and that, in the
meantime, he may put his objections in writing and file
them with the clerk; that on the day named he may be
heard and have his objections considered and passed up-
on; and, further, that unless he does object he will be for-
ever concluded and the bonds will be issued as contemplat-
ed. If, in the proceedings therefore, had, any notice has
been omitted, here he is given an opportunity to be heard;
if, at any stage of the proceedings, the boundaries of the
district were not correctly defined and he was thereby
misled, he may come in now and make his objection. In
other words, if anything which the law prescribes to be
done has been omitted, and the proceedings have been ir-
regular in any respect, he may now come in and point out
the objections and show why he should not be precluded
by such proceedings. Whatever his objections he is now
given a new opportunity to urge them. And under this
1917 law, if he does not embrace this opportunity to be
heard, then he must forever hold his peace. In the ab-
sence of this law and these validation proceedings, al-
though he might know about the proceedings, he might
simply abide his time, let the bonds be issued and let the
tax paying time arrive, and then resist the payment of the

taxes or enjoin the payment of the bonds, under certain conditions. This act means to say to him: "If you have any objection to urge against the validity of this proposed bond issue, come before the chancellor on the day we have set for the hearing and let us hear what your objections are, and let us determine whether they are well taken."

And it appears that it was contemplated that, in this manner, bonds which any given district may, under the law, issue, may be approved and validated, whatever defects there may have at first been in the proceedings. The act provides for a suit in the courts and for notice to be given to the persons in interest—notice given by publication, which was pointed out by Mr. Harris in his brief filed herein, has been upheld as proper notice to be given the taxpayers. And after this notice is given, every taxpayer in the district is in court with an opportunity to be heard. And then, if the chancellor shall approve the decree proposed by the bond attorney, persons who have objected or who are interested may appeal to the supreme court. And on the other hand, if the chancellor declines to make the decree validating the bonds, but holds them invalid, the other side, insisting that the bonds are valid, may appeal. The statute contemplates that the chancellor may not be bound by the opinion of the bond attorney, but may, when he hears objections and considers them, decree that the bonds are not good and may refuse to validate the proposed issue. This should dispose of the suggestion that any judicial power is vested in the bond attorney.

Section 3 of the act does not give finality to the bond attorney's opinion, but only to the decree of the chancellor. When that decree is made, approving and validating if this decree should condemn the bonds it is final if this decree should condemn the proposed issue, that also would be final, regardless of the opinion of the bond attorney.

The value of this act may be demonstrated by a glance through our reports covering the last five years and ob-

servation made as to the number of lawsuits that have been before this court involving in some way the proceedings preparatory to bond issues, and which could have been avoided by the use of this simple proceeding provided by the Act of 1917.

I am asking leave of the court to file this brief discussion just because of my personal interest in seeing this act established as part of our laws. When it gets fixed in its place and we see how useful it is, perhaps some other statute will be proposed which in its operation will help reduce the waste involved in long-drawn-out litigation.

*John C. Thompson,* for appellee.

The proceedings to authorize these bonds were taken by the county under the authority of section 331 of the Code of 1906 and chapter 207, Laws of 1920. Of eleven hundred and sixty-nine votes cast seven hundred and eighty-four votes were for bonds and three hundred and eighty-five votes were against bonds.

The obligations proposed to be issued are county-wide bonds intended to be paid by taxation upon all the taxable property in the county. Two special road districts in Hinds county have already issued road bonds under the provisions of chapter 176 of the Laws of 1914, which latter statutes has now been amended by chapter 277, Laws of 1920. Section 11 of chapter 176 of Laws of 1914, as amended by chapter 277, Laws of 1920, contains the following provisions:

"Districts separately taxed to pay principal and interest on bonds for building roads made of stone, gravel, chert, slag, or sand clay, or of a combination of such material, or any material equally durable, shall not be subject to an additional tax for building such roads in other parts of the county or for the payment of principal and interest on any county bonds hereafter issued for road purposes, without the consent of a majority of the qualified electors of said district voting in an election held for that purpose.

In these special bond districts the question of issuing the county bonds failed to receive the consent of a majority of the qualified electors of the districts voting on the question.    One of these districts, Dry Grove gravel road district, created in 1919, issued bonds for thirty thousand dollars dated July 1, 1919, payable over a term of twenty-five years, the last bonds being payable July 1, 1944. In this road district seven votes were cast for the county bonds on October 1, 1920, and seven votes were cast against the county bonds.    There was failure of the consent of a majority of the electors in this district.

In Edwards gravel road district, twelve votes were cast for the county bond issue and forty-eight votes against the county bond issue.    The question which is presented is whether under the constitution and laws of Mississippi these two insignificant districts having an electorate of seventy-four as shown by the vote on October 1, 1920, are to have a veto upon the voting power of the county electors generally at an election in which eleven hundred and sixty-nine votes were cast.

If the provisions of section 11 of Chapter 176 of Laws 1914, as amended, be given their literal effect, Hinds county is deprived of the power to issue county bonds to construct hard-surface roads of stone, gravel, etc., or other material equally durable.    The effect of section 11 of chapter 176 of Laws of 1914, as amended, when applied to the situation in Hinds county is, we shall show, to deprive Hinds county of the power to co-ordinate the roads heretofore constructed and complete a comprehensive and satisfactory system of county improvements.

Section 11 of chapter 176 of Laws of 1914, as amended, is economically unsound and no considerations of public policy or public interest require the court to apply a liberal construction to give effect to a beneficial purpose behind the act.

The provisions of section 11 of chapter 176 of Laws of 1914, as amended by chapter 277, Laws of 1920, violate the provisions of section 112 of the constitution requiring

that taxation shall be equal and uniform and that property shall be taxed in proportion to its value.

In *Adams* v. *Kuykendall,* 85 Miss. 571, it was held that the provisions of the charter of Vicksburg, excepting from taxation bills and notes given in whole or in part for property within the city subject to taxation, was not a proper classification of property for exemption and was unconstitutional and void as violating the provision requiring equality and uniformity.

The exemption so held to be invalid is in many respects similar in character to the exemption which is attempted to be conferred by section 11 of chapter 176 of Laws of 1914, as amended. Under the Vicksburg charter the exemption was based upon the fact that the property for which the notes had been given was already taxed. In section 11 of chapter 176 of Laws of 1914, as amended, the exemption is based upon the fact that property in the district is already taxed for hard-surfaced roads. The justification of classification of property for purposes of taxation cannot be applied to the provisions of section 11 of chapter 176, of Laws of 1914, as amended, if they were not applicable under the Vicksburg charter. A specific class of instruments or security was designated in the Vicksburg charter. In section 11, the exception is the real and personal property in the district. The district is an integral part of the county and the real and personal property of the road district must be taxed for county purposes in the same manner as other real and personal property in the county. Section 11 destroys equality and uniformity of county taxation for constructing improved roads.

From time immemorial, not only in Mississippi, but throughout the United States, the construction and improvement of roads has been a proper county purpose for which a county may exercise its general powers of taxation. Taxes for road purposes are uniformly regarded as proper county taxes. Throughout the country, the county levy for road purposes forms a very large part

possibly upwards of one-half of the annual county levy. If the exemption in section 11 of chapter 176 of Laws of 1914, as amended, is effectual, Hinds county cannot undertake to construct a single hard surfaced road which complies with modern requirements, because Dry Grove gravel road district and Edwards gravel road district have already issued bonds for the purpose of constructing hard-surfaced roads. The prohibition is directed not only against taxation to pay the principal and interest of county bonds but also against taxes for building such roads in other parts of the county. County taxation to construct hard surfaced roads must be equal and uniform throughout the county under the constitution as applied by the Vicksburg and other decisions, but section 11 of chapter 176 of Laws of 1914, as amended, if it is a valid legislative enactment, prevents Hinds county from levying an equal and uniform tax to construct hard surfaced roads, because these two road districts have not assented thereto.

If section 11 be given its literal application, the tax which the county may levy must be limited to property outside the special road districts, and the constitutional requirements of equality and uniformity of taxation throughout the county, are destroyed.

We submit that section 11 of chapter 176 of Laws of 1914, as amended, is unconstitutional and void.

Section 11 of chapter 176 of Laws of 1914, as amended, violates the provisions of section 170 of the Mississippi constitution, that the board of supervisors shall have full jurisdiction over roads, ferries and bridges. In the preceding point we have shown that without the assent of a majority of the qualified electors in the Dry Grove gravel road district and the Edwards gravel road district, Hinds county cannot levy any tax for the construction of a hard-surfaced road or for the payment of county bonds to construct hard-surfaced roads. If section 11 be given its effect, the net result is to deprive the board of supervisors of all power and jurisdiction over the construction of improved roads without the assent of the voters of these

two districts. They have refused such assent, and for the time being at least, Hinds county is helpless.

General laws have been passed conferring power upon boards of supervisors to construct improved roads. These laws have been passed in compliance with the requirements of section 85 of the constitution that the legislature shall provide by general law for the working of public roads by contract or by county prisoners or both, but that "Such law may be put in operation only by a vote of the board of supervisors in those counties where it may be desirable.

But the board of supervisors of Hinds county cannot put any general law for the construction of a hard-surfaced road into operation, because it cannot tax Dry Grove and Edwards road districts for such work; and if it attempts to tax the remainder of the county only, it violates the constitutional requirements of uniformity and equality. The elections which have taken place have served notice upon the board of supervisors that it is without authority over the roads except to do the most ordinary maintenance and repair work.

The constitution never contemplated that the powers of the board of supervisors might be so limited. While these powers may be regulated by law, the substantial jurisdiction and control over the public roads cannot be taken away from the board of supervisors. *Board* v. *Arrigi,* 54 Miss. 668; *Paxton* v. *Baum,* 59 Miss. 531; *Seal* v. *Donnelly,* 60 Miss. 658; *State* v. *Bolivar County,* 111 Miss. 967, 72 So. 700.

A statute or a portion of a statute, the provisions of which divest boards of supervisors of their jurisdiction over roads, etc., violates section 170 of the Mississippi constitution, and such statute or portion thereof is void. *Holmes County* v. *Black Creek Drainage Dist.,* 99 Miss. 739, 55 So. 963; *State* v. *Bolivar County,* 111 Miss. 867, 72 So. 700.

We submit that on this ground also section 11 of chapter 176 of Laws of 1914, as amended, is unconstitutional and void.

Section 11 of chapter 176 of Laws of 1914 as amended, is repealed by section 3 of chapter 207 of the Laws of 1920. Chapter 207 of the Laws of 1920, is a general act in relation to the issuance of bonds by counties and road districts. It was approved April 2, 1920, and is the latest enactment on the subject. It deals with the entire authority and method of issuing such bonds and provides in section 3.

Such bonds when issued shall constitute a lien on all the taxable property in such county and the board of supervisors shall annually levy a special tax on all such property sufficient to pay the principal and interest of such bonds as the same falls due. Section 6 expressly repeals all acts and parts of acts in conflict. Chapter 176 of Laws of 1914, was amended by chapter 277, Laws of 1920, approved March 26, 1920, effective from and after its passage. It will be seen that the provisions of section 11 cannot stand, if the provisions of chapter 207, Laws of 1920 be given effect.

This court has alreeady indicated that chapter 207, Laws of 1920, should be regarded as repealing all earlier enactments. In *Rosenstock* v. *Washington County,* 85 So. 91, bonds had been authorized by the county under chapter 174, Laws of 1916, at an election held April 3, 1919. These bonds had not been issued on April 2, 1920, when chapter 207, Laws of 1920, took effect. Although the court sustained the power to issue bonds under the election in that case, it was only because it considered that chapter 207 should not be deemed to have a retrospective operation, and added:

"We think that chapter 207, Laws of 1920, being the latest expressions of Senate Bill No. 146, now chapter 277, Laws of 1920, amending chapter 176, Laws of 1914, as amended by chapter 174, Laws of 1916, Laws of 1914, provisions for the election are concerned, but does not re-

peal that law any further than their provisions conflict with each other.

In *Jones Agricultural High School* v. *Leflore County,* 85 So. 198, it was held that chapter 207, Laws of 1920, superseded chapter 50, extra session of 1917, a special act authorizing Leflore county to issue bonds for the Ben L. Jones Agricultural High School, and that bonds not already issued, must be issued in conformity with chapter 207.

We submit that section 11 of chapter 176 of Laws of 1914 as amended by chapter 277, Laws of 1920, in so far as it limits or restricts the power of the county to levy taxes for county bonds has been repealed by the later enactment.

*Watkins, Watkins & Eager,* for appellee.

The single point at issue in this case is a legal one. Section 11, chapter 277 of the Laws of 1920, which was approved March 26, 1920, provides among other provisions, as follows:

"But the districts separately taxed to pay principal and interest on bonds for building roads made of stone, gravel, chert, slag, or sand clay, or of a combination of such material or any material equally durable, shall not be subject to an additional tax for building such roads in other parts of the county, or for the payment of principal and interest on any county bonds hereafter issued for road purposes, without the consent of a majority of the qualified electors of said district voting in an election held for that purpose."

To otherwise state the question; is the above quoted part of section 11 of chapter 277 of the Laws of 1920, approved March 26, 1920, repealed by chapter 207 of the Laws of 1920, and more particularly section 3 thereof, which chapter, although holding a lower chapter number, was approved April 2, 1920. In other words, was it necessary for this bond issue to get a majority of the

qualified electors of each separate road district in Hinds county, Mississippi, or was it necessary to get a majority of those voting in said election, voting in favor of the is-- suance of said bonds. We call to the court's attention that chapter 207 of the Laws of 1920, which contains section 3 upon which we rely, while being a chapter with a smaller number, was approved subsequently to-wit; on April 2, 1920, and chapter 277 of the Laws of 1920, was approved March 26, 1920. We have studied the various laws of the state of Mississippi with reference to the issuance of bonds for road purposes very assiduously, and we unhesitatingly, are of the opinion that the portion of section 11 of chapter 277 of the Laws of 1920, approved March 26, 1920, is repealed by chapter 207 of the Laws of 1920, and particularly section 3 thereof, approved April 2, 1920.

Chapter 207 of the Laws of 1920 is the last act of our legislature upon the subject, and it appears in section 3 as follows: "Should the election provided for by section 2 of this act result in favor of the proposed bond issue, by a majority of those voting in said election voting in favor of the issuance of said bonds, the board of supervisors may issue said bonds, either in whole or in part at such time within one year after the date of such election as they may deem best."

We have called the court's attention to the fact that section 11 of chapter 277 was enacted prior to section 3 of chapter 207 of the Laws of 1920. We wish further to call to the attention of the court that section 11 of chapter 277 is not even a new enactment for our Laws of 1920. The same section is contained in chapter 176 of the Laws of 1920. The same section is contained in chapter 176 of the Laws of 1914, which chapter 277 of the Laws of 1920 amends. Not only, that said section 11 is a part of chapter 145 of the Laws of 1912, which is amended by said chapter 176 of the Laws of 1914, which, as stated, are amended by chapter 277 of the Laws of 1920.

Therefore, chapter 207 of the Laws of 1920, and in particular section 3 thereof, is the last enactment of our

legislature on the subject as how to determine whether an election has resulted favorable or unfavorable to a bond issue.

It seems to us that the quoted portion of section 11 would have been repealed by section 3 of chapter 207 probably by implication, but this court is not under the difficulty of deciding whether the quoted portion of section 11 of chapter 277 of Laws of 1920, is repealed by implication, but we find that section Six of chapter 207 of the Laws of 1920 provides an express repeal of all acts and parts of acts in conflict with it. Section 6 leads as follows: "All acts and parts of acts in conflict with this act be and the same are hereby repealed."

The question next arises: "Is the quoted portion of section 11 of chapter 277 of the Laws of 1920, in conflict with section 3 of chapter 207 of the Laws of 1920. The answer cannot be but in the affirmative, because the first act, chapter 277, provides that it is necessary to get a majority in each separate road district, whereas section 3 of chapter 207 provides that it is only necessary to get a majority of those voting in said election, and says nothing whatsoever with reference to the subdivision into separate road districts. In other words, in the earlier act we find the test laid down to be: 'Did the bond issue receive a majority of those voting in said election.' In other words, did a majority of those voting in said election vote in favor of the issuance of said bonds, and if they did, section 3 then continues and provides that: "the board of supervisors may issue said bonds, either in whole or in part, at such time within one year after the date of said election as they may deem best."

We are very fortunate in being able to bring to your honor's attention, in addition to our own unsupported argument on the question two cases which this court has already decided with reference to chapter 207, Laws of 1920, and section 3 thereof. The first is *Rosenstock* v. *Board of Supervisors of Washington County et al.*, decided June 28, 1920. The other is *Ben L. Jones Agricul-*

*tural High School* v. *Board of Supervisors of Leflore County,* decided July 12, 1920.

So we say that it is perfectly clear that chapter 207, which has been held by this court in the Rosenstock case to be a general law, is a law enacted for the purpose of providing a uniform method and manner of issuing bonds and that since section 3 provides a different test as to how the majority in a bond issue election shall be determined, than what is provided in previous laws, then there is a conflict and that this section 3 takes precedence and prevails over the previous laws, because the legislative intion is clear from the act itself, because it is the latest utterance of the legislature on the subject and because it is expressly repealed by section 6 of said chapter 207.

Special counsel, Judge JOHN C. THOMPSON, of New York, will file in this cause a short brief upon: (a) The points herein disposed of; and (b) Setting forth very strongly the view that the provisions of section 11 violate the provisions of section 112 of the constitution of Mississippi, requiring that taxation shall be equal and uniform, and that property shall be taxed in proportion to its value; and that said section 11 is violative of the provisions of section 170 of the Mississippi constitution, because to give it effect, it would be a restriction of that provision of the constitution which provides that the board of supervisors shall have full power over roads, ferries and bridges.

In conclusion we wish to insist that the observations which we have endeavored to make, to the effect that: (a) Chapter 207 is a general law providing a uniform method and plan for the issuance of bonds by counties, and that being such a general enactment, the legislative intention to repeal all laws in conflict therewith is clear and unmistakable: and (b) That surely the provisions of section 11 of chapter 277, and of section 3 of chapter 207 are directly in conflict with each other, because containing different tests and criterions in the determination whether a bond issue has resulted favorably or un-

favorably; and that under section 6 of chapter 207 all laws in conflict with chapter 207 are expressly repealed; and (c) That chapter 207 is the latest utterance of our legislature upon the subject, and therefore, must prevail over section 11 of chapter 277; and (d) That since the provisions of section 11 of chapter 176 of the Laws of 1914, as amended by chapter 277 of the Laws of 1920 violate the provisions of section 112 of the Mississippi constitution requiring that taxation shall be equal and uniform, and that property shall be taxed in proportion to its value and since to give effect to section 11 of chapter 277 would grant an exemption to separate road districts and cause taxation in Hinds county to be not uniform, that section 11 is, therefore unconstitutional and uneffective; and, (e) And that section 11 of chapter 176 of the Laws of 1914, as amended, violate the provisions of section 112 of the Mississippi constitution which provides that the board of supervisors shall have full jurisdiction over roads, ferries and bridges, and that to give effect to provision of section 11 of chapter 277 would be to place a limitation upon and take away from the board of supervisors of the several counties the power and authority given to them under the constitution of the State.

If the effect which these protestants wish to put upon section 11 of chapter 277 is the correct doctrine, then a numerically insignificant portion of the territory of Hinds county can form itself into a separate road district, issue a small amount of bonds, improve only a small part of its roads and then say to the board of supervisors of Hinds county that it may not issue any further bonds for the building of roads in Hinds county and we submit that aside from the legal questions involved that such a result would be practically disastrous to the construction of public roads in every county in Mississippi at a time when a coordination and a systemization of these roads with a county as a unit is so necessary and desirable, and would

hinder the progress of the county, and that such a construction is economically unsound and absurd.

We respectfully submit to the court that upon every principle of law, that section 11 of chapter 277 of the Laws of 1920 has no application because it is either un-unconstitutional and void, or because it is repealed by the later enactment of chapter 207 of the Laws of 1920.

SMITH, C. J., delivered the opinion of the court.

(After stating the facts as above). The questions presented for decision are:

(1)   Is chapter 28, Laws Ex. Sess. 1917, a valid statute?

(2)   Can the bonds be issued, although a majority of the qualified electors of the two separate road districts have not consented thereto?

Except in so far as the Constitution may otherwise provide, the legislature has full power to provide both for the issuance of bonds by municipalities, counties, and other public bodies of like character, and for the validation before their issuance of bonds proposed to be issued by such bodies without authority so to do, so that chapter 28, Laws Ex. Sess. 1917, is valid unless it violates some provision of either the state or federal Constitution *Lippit* v. *City of Albany*, 131 Ga. 629, 63 S. E. 33; *Lasseter* v. *State*, 67 Fla. 240, 64 So. 847; *Steen* v. *Board of Public Instructions of Palm Beach County* (Fla.) 85 So. 684.

The appellant does not contend that this statute violates any section of the federal constitution, but that it violates our state constitution in three particulars: First, by conferring judicial power on the state's bond attorney; second, by imposing on the state's bond attorney duties which should be discharged by the attorney general or district attorneys; third, by conferring on the chancery court a jurisdiction not embraced in section 159 et seq., of the constitution, by which the jurisdiction of that court is prescribed.

The first of these objections is wholly without merit for the powers here conferred upon the state's bond attorney

are in no sense judicial, and the second is equally so, for the duties here imposed upon the state's bond attorney are simply to assist certain public corporations in issuing bonds when called on by them so to do; and while the legislature may have had the power to impose this duty upon the attorney general or district attorneys, as to which we express no opinion, there is no constitutional provision which requires it so to do.  The power to validate a proposed bond issue conferred by the statute upon the chancery court is a jurisdiction which, prior to the enactment of the statute, was not possessed by any court; consequently the legislature had the power to confer it upon the chancery court. *Bank* v. *Duncan*, 52 Miss. 740. Morever, the jurisdiction to be exercised under the statute is very similar to that exercised by chancery courts in a proceeding by injunction brought by a taxpayer to enjoin the issuance of bonds, and consequently is more in accord with the procedure of the chancery than of the circuit courts.

Chapter 207, Laws of 1920, approved April 2, 1920, deals with the entire subject of the authority of counties, etc., to issue bonds and the method to be pursued by them in so doing, and expressly repeals all statutes or parts thereof in conflict therewith.  This statute provides for the issuance of county-wide bonds, when authorized by a majority of the qualified electors of the county voting in an election held for that purpose, and contains no exemption in favor of separate road districts, but, on the contrary, expressly provides that:

"Such bonds when issued shall constitute a lien on all the taxable property in such county or consolidated or rural separate school district or separate road district, as the case may be, and the board of supervisors shall annually levy a special tax on all such property sufficient to pay the principal and interest on such bonds as the same falls due."

The exemption in favor of separate road districts contained in chapter 277, Laws of 1920, is therefore in con-

flict with the provisions of chapter 207, Laws of 1920, a later enactment of the legislature, and is therefore repealed thereby. *Rosenstock* v. *Washington County*, 85 So. 91; *Jones A. H. S.* v. *Leflore County*, 85 So. 198.

*Affirmed*