LOVE v. MAYOR & BOARD OF ALDERMEN OF YAZOO CITY.

(Division A.   Jan. 11, 1932.)

[138 So. 600.   No. 29510.]

R. R. Norquist, of Yazoo City, for appellant.

**J. G. Holmes,** of Yazoo City, for appellee.

**McGowen, J.,** delivered the opinion of the court.

Love, the appellant here, filed his bill in the chancery court of Yazoo county, as a taxpayer therein, against the mayor and aldermen of the city of Yazoo City, Mississippi, by which he sought injunction against the appellees, restraining them from issuing or causing to be issued thirty-four thousand dollars in bonds, and from making a refund on paving assessments, and from canceling the unpaid paving assessments of certain abutting property owners. The appellees, the mayor and board of aldermen, filed an answer, admitting all of the allegations of fact contained in the bill, but denied the legal conclusions alleged therein; and upon the hearing thereof on bill and answer, the court below denied the relief prayed for, and dismissed the bill of complaint.

In brief, the bill averred that prior to November 10, 1930, the city of Yazoo City adopted a system of street paving on the front foot assessment plan, by assessing the whole cost thereof, exclusive of the cost of street intersections, against the abutting property; and, pursuant to said plan, certain streets of the city were paved, and 'the total cost, as stated, assessed against the abutting property and the owners thereof; that the city had collected certain assessments, and certain assessments were then due; and attached a transcript of the record of the proceedings, imposing said assessments on property owners for paving.

It was alleged that the city issued and sold bonds and collected the proceeds thereof to pay for prior paving, and that certain bonds remained due and unpaid.

The bill further alleged that the city of Yazoo City, by ordinances duly adopted on June 10 and November 10, 1930, by virtue of chapter 40 of the Laws of 1930, declared its intention to further extend the paving of its streets on an assessment plan less than that imposed in prior street paving projects, in order to pave certain

streets; the cost of said paving to be borne partly by abutting owners and partly by the city, but on an entirely different basis from that theretofore adopted by said city; and the resolution further provided that the city would, in order to provide equality in the expense of street paving, refund to abutting property owners in prior street paving projects mentioned above, a certain proportion of the amount paid by them under said paving assessments, and cancel a certain proportion of any unpaid street paving assessments made theretofore against abutting property owners, and also provide for a levy of a general assessment against the taxable property of the entire municipality, in order to refund to certain abutting property owners, and to equalize the said assessments under the former plan, and under the plan then adopted.

The bill further alleged that by an ordinance adopted November 10, 1930, the city declared its intention to issue the bonds of the municipality, in order to provide for the payment of the refund as above set forth, and provided that an assessment against all the taxable property of the municipality should be levied to pay said bonds; and fixed the 8th day of December, 1930, as the date for the hearing of objections or remonstrances to the proposed refund of paid assessments, and directed newspaper publication, giving notice of a meeting on December 8, 1930; providing, further, that if twenty per cent of the qualified electors of the municipality filed a protest against such refund and cancellation before said meeting, then an election, as provided by chapter 40 of the Laws of 1930, could be had, for determination by the qualified electors thereof whether the proposed refund or cancellation should be made; and provided further that if no protest was filed, the said board would be authorized to make said proposed refund and cancellation, or otherwise avail itself of the statute; and that said notice was duly published.

At the same time, it is alleged that the board declared its intention to issue bonds of the city in the amount of thirty-four thousand dollars to provide funds for the purpose above stated, and that the bonds would be issued at the regular meeting of the board on December 8, 1930. The resolutions further ordered an election to be held in the municipality on the fourth day of December, at which the qualified electors might vote for or against the proposed bond issue. This publication was duly made, the notice of the election was duly given, the election was duly and legally held and resulted in favor of the issuance of said bonds by a vote of one hundred forty-four for the bond issue, to one against it; and thereafter, on December 8th, the mayor and board of aldermen ordered the bonds in the sum of thirty-four thousand dollars to be issued for the purpose already stated.

The bill further averred that said bonds had been duly validated by the chancery court of Yazoo county, and that the mayor and board of aldermen would issue the bonds unless prevented from so doing by the chancery court, and that the bonds, if issued, would be a lien, charge, and tax upon all the taxable property of the city.

All the proceedings, including the validation and the decree of the chancellor validating the bond issue, are made exhibits to the bill, and, as to each and all of the proceedings which we have outlined, it is alleged that they were duly and legally passed in accordance with the statutes. The bill charged that chapter 40 of the Laws of 1930 had been complied with, but that said chapter was violative of sections 100, 66, 16, 87, and 90 of the state Constitution of 1890.

It was further charged that said chapter 40, and said ordinance adopted thereunder, as to assessments and refunds and cancellations, are so vague that they are void, and that the city cannot thereunder make a fair and legal apportionment.

The bill further alleged that Love was a resident citizen and taxpayer within the limits of the municipality.

It is conceded that the proceedings by the taxing district to issue the bonds as authorized by chapter 40, Laws of 1930, was in all respects regular; it is likewise conceded that the proceedings to validate said bonds as authorized by chapter 10 (sections 312-317), Code 1930, was regular in all respects; and especially is it alleged that the notice to the taxpayers giving them a right to object in the chancery court, and the date of the hearing, was duly and regularly published. There was no objection filed by any taxpayer, and the bonds were validated in accordance with sections 313 and 314 of Chapter 10, Code 1930.

In the decree validating the bonds, there appears the following: "The transcript shows that all the proceedings of the board in the matter of the issuance of said bonds were in strict accordance with the constitution and laws of the State of Mississippi, including Senate Bill 136 of the Mississippi Legislature of 1930, and pursuant to lawful resolutions, ordinances and proceedings of the board, and the issuance was further authorized by the result of an election legally ordered and legally held on December 4, 1930, in said city, at which election a majority of the qualified electors voting thereat voted for the issuance of said bonds."

We are relieved from expressing any opinion as to whether or not chapter 40, supra, is in violation of the several sections of the constitution, and we expressly pretermit any expression of opinion as to the validity or invalidity of said chapter. We have reached the conclusion that the decree validating the bond issue in this case by virtue of section 314 is res adjudicata of every question presented here, and that the bill for injunction cannot be maintained to test constitutional questions which were finally settled and conclusively adjudicated

in the validation proceedings by the final decree therein entered.

Section 314, Code 1930, reads as follows: "If the chancellor shall enter a decree confirming and validating said bonds and there shall be no appeal by either party from said decree, or if on appeal the supreme court enters its decree confirming and validating said bonds, or other written obligations, the validity of said bonds, or other written obligations so issued shall be forever conclusive against the county, municipality or district issuing same, and the validity of said bonds, or other written obligations, shall never be called in question in any court in this state."

Section 316, Code 1930, provides that "the clerk or other proper officer of the county, municipality or district issuing same, shall stamp or write on each of said bonds over his signature and seal, the words 'validated and confirmed by decree of the chancery (or supreme) court,' together with the date of the rendition of the final decree validating same, which entry shall be taken as evidence of the validation of said bonds in any court in this state."

When the state bond attorney filed a transcript of the record made by the taxing district in this proposed bond issue with the clerk of the chancery court, there was begun a case in court, with adverse parties, to-wit, the taxing district on the one hand and the taxpayer on the other, and by the notice to the taxpayers, Love, a taxpayer, being therein included, was notified in accordance with due process to appear in court on the date specified to make any objection he had; but he did not so appear and permitted the judgment to become final validating the bond issue, in which it was clearly recited that the bonds were issued in accordance with the laws and constitution of the state. It was not necessary that Love, the appellant here, be summoned individually in order to comply with due process and in order to give him his

day in court. Where, in this character of proceeding, the taxpayers of a district are involved and the taxing district puts in issue the validity of its action, it is not necessary to summon a taxpayer individually, but the notice addressed to all the taxpayers of the taxing district is a notice to each and all of them; and if a judgment by default is permitted by them, it has the same force and effect as any other judgment or decree by default rendered by a court of competent jurisdiction. Fidelity National Bank v. Swope, 274 U. S. 123, 47 S. Ct. 511, 515, 71 L. Ed. 959.

The constitutionality of this chapter was reviewed and settled affirmatively by this court in Bacot v. Board of Sup'rs of Hinds County, 124 Miss. 231, 86 So. 765. We have further held that the decree validating bonds in regular proceedings pursuant to constitutional notice is conclusive on all parties. Jackson & E. Railroad Co. v. Burns, 148 Miss. 7, 113 So. 908. The decree validating bonds of a separate school district is held to be conclusive against a collateral attack on the validity of the order creating the district. Von Zondt v. Braxton, 149 Miss., page 461, 115 So. 557.

In Bryant v. Board of Sup'rs of Yalobusha County, 133 Miss. 174, 98 So. 148, this court held that in a proceeding under this chapter it was error for the court below not to permit the taxpayer complaining to show that more land was embraced in the order than was included in the petition, and that the court should have permitted oral evidence on this question.

In Parker v. Board of Sup'rs of Grenada County, 125 Miss. 617, 88 So. 172, 173, this court said:

· "This statute makes the validity of any bonds validated thereunder conclusive, and prevents them from being thereafter assailed, whether the alleged defect therein is the failure of the county, municipality, or district to comply with the provisions of the statute under which the bonds were issued, or is the absence of any authority

in the county, municipality, or district to issue bonds in any event of the character of the bonds sought to be assailed or for the purpose for which they were issued.

"The legislature has the unquestioned power to authorize the issuance of the bonds here in question; consequently it has the power to provide that they shall be valid, though issued without previous authority in the appellee so to do. Bacot v. Board of Supervisors [124 Miss. 231] 86 So. 765.

"Whether bonds which the legislature is without power to authorize counties, etc., to issue, can be validated under this statute, is not here involved, and will not be here decided."

Of course, if chapter 40, supra, violates any one or all the sections of the constitution alleged, then the legislature would not be authorized to confer the power upon subordinate taxing districts to issue bonds, nor would the legislature have the power to validate the same. This court said in the case of Sykes v. Mayor of Columbus, 55 Miss. 115, with reference to an attempt to validate bonds authorized to be issued for the purpose of building a railroad: "It is well established by the authorities that, if the power did not exist, the bonds are not obligatory in the hands of the railroad company, or a remote holder who has paid value for them," in which case the legislature had undertaken to validate the bonds issued by the city of Columbus. But the question presented here is sharply and entirely different. We have here a court of competent jurisdiction, with a case before it, with adverse parties, the taxing district and the taxpayer; the court having jurisdiction of the person and of the subject-matter has entered its decree that the bonds here were legally and constitutionally issued.

To illustrate the case presented here, if Love, the complaining taxpayer, had appeared in the chancery court and filed his objections to the validation of the bonds and raised the constitutional questions which he raised col-

laterally here, and the court there had passed upon those questions and entered a decree of validation, which is the subject of attack here, and then had not prosecuted an appeal from that adverse judgment, can any one think for a moment that the decree thus entered was not res adjudicata of any attack upon the bond issue? Certainly not. The principle of law applicable to the case at bar is the same. It may be that the court erroneously decided that the bonds in this case were lawfully and constitutionally issued; it may be that the court below erroneously decided that chapter 40, Laws 1930, was an indivisible scheme; that the statute allowed a refund to a taxpayer who had paid more than his share and could not refuse a pro rata cancellation to one who had not paid enough to equal his share under the proposed scheme. This would appear to be sound; but we express no opinion thereon, because it is not necessary for us so to do. So far as the decree in the validation case is concerned in the case at bar, it is just as binding as if it had been upon appeal to the supreme court and there affirmed. The taxpayer could not delay until the final decree had been entered in the validation proceeding and then raise the questions which were necessarily involved in that decree by a collateral proceeding, the effect of which would be to set aside that decree. The main purpose of chapter 10, Code 1930, was to have the validation of the bonds determined in order that the bonds so validated might be readily sold in the market, to create in the mind of the bond buyer a sense of security, in that by the decree of the court and the fiat of the legislature there could be no further attack upon the validity of the bond issue. As a matter of experience, we know that much of the litigation that arose prior to the passage of this act was by injunction, alleging the invalidity of a bond issue, because same was in violation of some section of the constitution. A suit would be brought by a taxpayer after the bonds had passed into

the hands of innocent purchasers when the tax levied thereon was about to be collected.

The validation scheme provides an easy remedy for every taxpayer, whereby he may have his day in court without the hazard and risk of seeking the aid of an equity court by injunction, and damages on the dissolution thereof. It provides a speedy and less expensive remedy for the taxpayer. There is no reason in logic or in law why the taxpayer should be permitted to decline to enter his appearance and objections in the validation proceeding, allow the decree there to be entered, and then make the formal attack which might have been made in that proceeding in spite of that decree, and in an effort to evade it.

The rule of res adjudicata or estoppel must be applied here in order that the wise policy of the law may be carried out; a termination of litigation. ''Where a court has jurisdiction of the subject-matter and the parties in interest, its judgment is not alone res adjudicata of the questions specifically presented by the pleadings, but is also res adjudicata of all questions necessarily involved and which could have been presented.'' See Bates v. Strickland, 139 Miss. 636, 103 So. 432, and authorities there cited.

We think the authorities cited from our own courts are sufficient, and are determinative of the question presented here. But in the case of Schmelzer v. Kansas City, 295 Mo. 322, 243 S. W. 946, 947, the principle here announced is fully supported in the construction of a statute similar to our validation statute and not differing therefrom in any material aspect. The court there said: ''She allowed the judgment to go without appearance or appeal. She is now bound by it.''

In the Swope case, supra, this announcement is approved by the supreme court of the United States passing upon the same question, whereby a constitutional question was sought to be raised in the federal court

subsequent to the rendition of a validation decree by a state court, and the following language was used: "That the judgment is binding on the parties and their privies and hence not open to collateral attack would seem to be the only reasonable construction of the statute, if that question were for us to decide. But the supreme court of Missouri, since the pendency of the present suit, has held that the judgment rendered by the Jackson county circuit court in a similar proceeding is not open to collateral attack by the property owners within the benefit district, and that such property owners may not litigate in another suit, questions, including the constitutionality under the Fourteenth amendment of the assessments levied, which might have been raised in the circuit court proceeding. Schmelzer v. Kansas City, supra. This decision, although subsequent to the institution of the present suit, effected no change in the local law, upon which appellees had relied. It must be accepted as establishing the effect as res adjudicata of the proceeding had under the Missouri statute. Compare Edward Hines, Trustees, v. Martin, 268 U. S. 458, 45 S. Ct. 543, 69 L. Ed. 1050."

We are of opinion, therefore, that the decree of validation settled every question presented here, and is res adjudicata both as to the issuance of the bonds, the payment of the proceeds to the purpose for which they were issued, and the accomplishment of the equalization intended by rebate, refund, and remission of taxes yet unpaid.

"A municipal bond which is issued to raise money for a purpose for which the public funds cannot be lawfully expended is absolutely void, even in the hands of a bona fide purchaser for value. A general grant of power by the legislature to a municipal corporation to borrow money and to issue bonds does not authorize the issuing of bonds for a purpose for which the municipality cannot lawfully expend money." 19 R. C. L., p. 1018, paragraph

311; Osborne v. Adams County, 106 U. S. 181, 1 S. Ct. 168, 27 L. Ed. 129.

The decree of validation is res adjudicata of the issuance of the bonds, of the disbursement of the proceeds thereof, and of the cancellation contemplated by the statute here under review, and chapter 40 is not vague and indefinite.

. Affirmed.