**MISSISSIPPI POWER & LIGHT COMPANY**

v.

**TOWN OF COLDWATER et al.**

No. 732.

United States District Court
N. D. Mississippi,
Delta Division.
June 9, 1958.

Green, Green & Cheney, Byrd, Wise & Smith, Jackson, Miss., Fred B. Smith, Ripley, Miss., McClure, Fant & McClure, Sardis, Miss., for Mississippi Power & Light Co.

John Eldridge, Jr., Augusta, Ark., for Woodruff Electric Coop. Corp. and T. E. Bostick.

Johnson & Troutt, Senatobia, Miss., Chester L. Sumners, Oxford, Miss., for all other defendants.

MIZE, District Judge.

The Plaintiff, Mississippi Power & Light Company, is a Florida corporation doing business in Mississippi and is in the business of generating, selling and distributing electric current throughout a large area of North Mississippi, owning a statewide electric generating transmitting and distributing system covering, roughly, the Western half of the state of Mississippi, its system being an integrated unit embracing the generation, transmission and distribution of electricity as a public utility for hire. The Defendant, Town of Coldwater, is a municipal corporation existing under the laws of the state of Mississippi with its domicile in the Northern District of Mississippi. W. P. Veazey, Jr. is the Mayor

of said town, and Earl Embrey, E. R. Brantley, C. F. Hawks, E. E. Wheeler and F. F. Veazey, Jr. are all Aldermen of the town and were at the time of filing the complaint herein, and are citizens of Mississippi. North Central Mississippi Electric Power Association is a corporation organized under the laws of Mississippi and doing business in the Northern District of Mississippi. This Defendant will hereinafter be referred to as North Central. It has its residence and legal domicile in the town of Coldwater, Mississippi. Woodruff Electric Cooperative Corporation is an Arkansas corporation, having its residence and legal domicile therein, not qualified to do business in Mississippi, but alleged by the Plaintiff to be doing business in Mississippi. This Defendant will hereinafter be referred to as Woodruff. T. E. Bostick is a citizen of the state of Arkansas, but alleged to be doing business for and on behalf of the town of Coldwater, North Central and Woodruff within the state of Mississippi. W. G. Durley was former Mayor of said town, his term expiring in July, 1957, and is a resident of the state of Mississippi.

The Plaintiff filed its complaint against all of the Defendants above named and alleged that it was suing for itself, on behalf of itself and other taxpayers in the town of Coldwater who may join in the suit and contribute to the cost thereof and whose joinder would not oust the jurisdiction of the Court. Plaintiff alleged jurisdiction by virtue of diversity of citizenship, more than $3,000 involved, and on the further ground that the cause of action arises out of the statutes of the United States, as well as the contract clause of the Federal Constitution. It alleged that it owned property in the town of Coldwater subject to the ad valorem taxation of the town and that it was entitled to enjoin and restrain the taxing power of the town so as to confine it within statutory limits. It alleged that the town had exceeded its authority in and about the acquisition of an electric distribution system and if permitted to let a contract on the 17th day of December, 1957 for the construction of an electric distribution system, the result would be unlawfully to impose on complainant's property a tax lien; that complainant's integrated electric distribution system had been operated since 1927, but that during the year 1950 unlawful activities were begun by a group of people in Tate and De Soto Counties to secure a loan from the Rural Electrification Administration to the end that a competing electric distribution system should be established in that area to compete with and destroy the valuable property rights of the complainant, and particularly in Coldwater; that this would be done by taking from complainant those to whom it was rendering lawfully central station electric power. It alleged that erroneous information was given to the REA in order to procure the loan, but nevertheless a loan in the amount of more than one million dollars was secured from the REA and that then the Defendant, North Central, was created, but that North Central has practically been a failure. It alleged that North Central would continue to be a failure unless wrongfully financed by Woodruff, who had become entangled therein, and obligated to make large advances thereto, and that all Defendants had conspired to destroy the property rights of Plaintiff in Coldwater and to take from it customers who were being furnished central station power by it; that this was an unlawful conspiracy and should be enjoined. It alleged many overt acts under the alleged conspiracy, which it is not necessary here to set out. Among others it alleged that Durley was Mayor of the town and was likewise Secretary of North Central and a member of its board of directors; that under his leadership a movement was started to issue bonds in the sum of $98,500 for the purchase and erection of an electric distribution system therein and that an election was submitted to the voters of Coldwater, which election it alleges was unlawfully conducted and void, but which authorized the Mayor and Board of Aldermen to issue bonds in the sum of $98,-

500. It further alleged that bonds were actually issued in the sum of $98,500 and that they were unlawfully sold or attempted to be sold, and that purportedly J. S. Love & Company purchased said bonds, but that as a matter of fact the said J. S. Love & Company was simply an agent and was purchasing them for Woodruff, and that Woodruff had an agreement with the town and J. S. Love & Company by which he would take over the bonds for the sum of $98,500; that there were numerous defects in the election and in the bond issue, as had been fully set out in the action there in the Chancery Court of Tate County, Mississippi relative thereto. It alleged that the Mayor and Board of Aldermen in June, 1957 were holding special meetings relative to the issuance of the bonds and sale thereof, but were not writing up the minutes and were secreting them from the representatives of the Mississippi Power & Light Company. It alleged that when this difficulty was encountered, realizing that the town had no legal right to issue and sell the bonds because of the defects, the Plaintiff herein filed in Chancery Court of Tate County, Mississippi, a lawsuit against the town of Coldwater, et al., in which it asked, among other things, for a permanent injunction against the issuance and sale of the bonds. It alleged that the town entered into a contract with North Central for operating an electric system and the town proposed that the system would be operated at rates charged by North Central to its members, customers and citizens to whom it furnished electricity; that under the leadership of Defendants Durley and Bostick the Mayor and Board of Aldermen adopted a resolution on June 26 authorizing Durley and the Clerk of the Board to execute an agreement with North Central and that the purport of the resolution was that the agreement would provide for the sale of the electric distribution system to be constructed by the town to North Central on terms and conditions therein set out, and that the town would construct the electric distribution system, to be approved by North Central and supervised by it. It alleged that there was an agreement by which the town would sell and convey to North Central and North Central agreed to buy the distribution system, including all the right of way privileges and easements, franchises, etc., and then provided how North Central would pay for it, alleging that all of this was unlawful. It alleged that in June, 1957 the Board of Directors of North Central passed a resolution authorizing the Board of Directors of North Central to borrow a sum of money not over $500,000 from another cooperative, domestic or foreign corporation and to execute a second deed of trust as a second lien on the properties of North Central and to give the holder of the deed of trust control over the affairs of North Central during the life of the loan; that about the same time a resolution authorizing the sale of the facilities and properties of North Central and empowering and directing the Board of Directors of North Central to execute an irrevocable option to sell said properties within a period of ten years to another cooperative or corporation was passed. It alleged that on or about March 1, 1957 an agreement was entered into between Woodruff and North Central relating to the extension of financial aid to North Central and the giving of an option to Woodruff to purchase outright the properties of North Central. Plaintiff alleged that as a result of this there was effort on the part of Woodruff, North Central and the town for Woodruff to acquire the town's electric distribution system whenever it was constructed; that as of June 20, 1957 there was an operating agreement entered into between North Central and Woodruff supplementing the agreement made as of March 1, and alleges many other overt acts by the alleged conspiracy which are not necessary here to set out. It alleged that in June of 1957 North Central replaced a single phase line with a three phase feeder without any certificate of convenience and necessity from the Mississippi Public Service Commission and that Woodruff and others sent in large

quantities of material and men to phase up this line within one day's time. The bill of complaint herein is lengthy and it is not necessary to set out further charges made in the complaint of unlawful conduct on the part of the Defendants. Among other things, however, it did allege that in order for the town to submit to the voters the question of the construction of an electric system it must have a prospectus of the system and the probable cost thereof. It alleges that the town employed the firm of Allen & Hoshall, Engineers of Memphis, Tennessee to draft this prospectus and give the estimated cost; that this firm did that, but as a matter of fact it was inaccurate and did not state the true facts with reference to the feasibility of the construction and paying for by the plant and that is one of the reasons alleged as to why the election was void. It alleged that pursuant to the election and the bond issue that the town was advertising to receive bids on December 17, 1957 for the construction of the electric distribution system in the town according to the plans of Allen and Hoshall and that unless restrained, the town would unlawfully award a contract for the construction of such system. The prayer of the complaint was for full and complete relief, both at law and in equity, and specifically prayed that a restraining order and permanent injunction issue against the town, restraining it from letting a contract on December 17, 1957 for the construction of an electric system in accord with the plans of Allen and Hoshall; that the town be adjudged not to have available the amount of $98,500 of revenue bonds, but that the bonds be canceled; that the Plaintiff be adjudged to have an exclusive right within the town of Coldwater to retain its electric system and that North Central and Woodruff should not have any right to operate a system in the town of Coldwater, except in accordance with a certificate of convenience and necessity issued by the Public Service Commission of Mississippi and that they be enjoned from in any wise interfering with the rights of the

Plaintiff obtained under Section 5 of Chapter 372 of the Mississippi Laws of 1956, and for specific performance of its contract with the town. It presented its complaint to the United States District Judge for the Northern District of Mississippi and a temporary restraining order was granted.

The Defendants answered the complaint, denying all the material allegations thereof, and averred that everything that was done by the town of Coldwater was lawfully done and within the statutory rights of the town. It denied there was any conspiracy; denied that the election was void; denied that the sale of the bonds was void, but in their answer they have admitted that the bonds in the sum of $98,500 have been canceled by the town and are no longer valid obligations of the town, and that J. S. Love & Company, the purchasers, were notified of the cancellation. On the trial of the case, however, the testimony showed that the bonds are still held in escrow, together with the $98,500, but in open court and in the answer Defendants aver that the bonds have been recalled and canceled. The Defendants further state on the defense that all the matters complained of in the bill of complaint herein were fully adjudicated in the Chancery Court of the State of Mississippi and that all issues are thereby res adjudicata and that the Plaintiff is precluded from bringing this suit in this court on the same issues that were tried by the Chancellor in the state court.

The Plaintiff did file a suit in the Chancery Court of the State of Mississippi, which was heard and decided on the 1st day of November, 1957 and a final judgment entered on that date. Upon the hearing on the merits the Court dissolved the injunction and dismissed the orginal bill of complaint and the amended supplemental bill of complaint, though adjudicated some of the issues in that lawsuit in favor of the Complainant. From that final judgment an appeal was prosecuted to the Supreme Court of Mississippi and is now pending in that court, but will not be reached for final hearing

until the fall of 1958. The Plaintiff applied to the Supreme Court of Mississippi, after the appeal was docketed there, for a supersedeas and moved the court to continue in effect the injunction that had been granted by the Chancery Court of Tate County prior to the trial on the merits. The Supreme Court heard this petition and motion for supersedeas, which case is reported in Miss., 99 So.2d 443, 446, and for the reasons therein stated, the Court said: "Affirmative injunctive relief, denied appellant by the lower court, may not be granted in this court under the guise of a writ of supersedeas."

The question at the threshold of the present suit is whether or not the decision in the state court is res adjudicata of the things complained of in this suit. In order to determine that question it is necessary to quote from the opinion of the trial court, which opinion was included and made a part of the judgment by appropriate language to that effect. The opinion is as follows:

"Complainant is a public utility, selling electricity it generates, and as such, for a number of years has sold electricity to the public in Coldwater, Mississippi, where it has lines, poles and other physical property, operating under a non-exclusive franchise by Coldwater now in force, and is a taxpayer in and to that town. As such, it is entitled to all the protection of the law from unlawful competition of whatever nature, and the courts will afford it all the protection that it needs from such competition. If the competition is lawful, however, the courts offer no protection there against.

"Coldwater has no electric system of its own.

"North Central Mississippi Electric Power Association, a corporation, has some eighteen or twenty consumer customers in that town.

"Charging conspiracy to damage it and deprive it of vested property rights under its franchise, Complainant brought this suit by Bill of Complaint filed June 28, 1957, followed by Amended and Supplemental Bill filed July 22, 1957, in which it sought temporary injunction, which was granted, and permanent injunction; and asked the Court to adjudicate certain bonds of Coldwater null and void, and illegally and unlawfully issued and sold, and that the bonds cannot be lawfully sold, and that acts alleged by it to be conspiracy on the part of the Defendants be found to be illegal and void."

It joined as Defendants: The town of Coldwater, Mississippi, and in this opinion, the Town of Coldwater will be referred to as "Coldwater"; North Central Mississippi Electric Power Association, which will be referred to as "North Central"; and Woodruff Electric Cooperative Corporation, an Arkansas corporation, which will be referred to as "Woodruff".

"With its Bill of Complaint, the Complainant directed Interrogatories to certain of the Defendants, which Interrogatories were answered.

"Process for Woodruff was served on the Secretary of State.

"Woodruff filed a motion to quash the process, and hearing was had on whether it was engaged in business in Mississippi in such manner as to make the Secretary of State its agent for process. At the conclusion of the hearing on that motion, it was the Court's opinion that the question as to whether Woodruff was engaged in unauthorized business in Mississippi was an issue to be determined on the merits; and by agreement of the parties, the decision on the motion to quash was reserved until after the hearing on the merits.

"At that time the Court pointed out that the motion to quash was not to the jurisdiction but to the manner of service of the summons, and that under the statute, even though the motion to quash should be sustained, Woodruff had put in its appearance, and the only thing to be gained would be a continuance to the next term of court.

"Under those circumstances, and not desiring to have the case continued until the next term of court but reserving its

rights under the motion, it adopted the Answer of North Central; and the case went to trial on its merits.

"The Defendants answered, denying conspiracy and the illegal acts complained of.

"Complainant alleged, and Defendants denied, that it was ready and willing to serve Coldwater; except that the Defendants admitted that Complainant was willing to serve the densely populated parts of Coldwater.

"Complainant alleged, and Defendants denied, that certain acts of Coldwater were illegal, which will be fully set forth later.

"Complainant alleged, and Defendants denied, that Defendants' acts were only to compete with Complainant. The Defendants alleged that their purpose was to give as low priced electricity as possible to the consumers in Coldwater.

"The Complainant complained that North Central had "heavied up" a line to 3-phase. North Central admitted it but denied any illegal conduct in the doing of it, and answered that this would have been done regardless of any agreement with Coldwater.

"Complainant alleged, and North Central denied, any effort to by-pass or disregard the Mississippi Public Service Commission.

"Complainant alleged that it is damaged by Defendants' acts, and the Defendants denied the damage.

"There was a motion to dissolve the temporary injunction, which was heard with the cause on its merits.

"On July 6. 1957, after the Original Bill was filed, Complainant, in Cause No. 2066 in the Circuit Court of Tate County, Mississippi. filed a petition for Writ of Mandamus, to require W. P. Veazey, Jr., Mayor of Coldwater, to sign a bill of exceptions so that appeal might be taken from certain acts set forth in the Bill of Exceptions. On the same day it filed another Petition for Mandamus in the same Court, and numbered 2067, to require Mayor Veazey to sign another Bill of Exceptions for appeal to the Circuit Court. By these suits, issues are raised largely but not entirely covered in the present suit. These suits are now pending in that Court.

"On July 15th, 1957, Complainant filed with the Public Service Commission of Mississippi a Petition for a Cease and Desist Order, wherein it made North Central and Coldwater Respondents, and, on similar facts to those here alleged, seeks an Order that they not build an electric distribution system in Coldwater or operate such where Complainant has a franchise. That petition is still pending.

"The Temporary Injunction prohibits Coldwater and North Central from proceeding on bids for, and awarding contracts to build, a proposed electric system; from spending any of the bond proceeds therefor; and from taking further steps to consummate the agreements between them to operate such system.

"On the Motion to Quash, Woodruff is a corporation organized under the laws of Arkansas and domiciled at Augusta, in that State. It serves several counties there in East Central Arkansas. It has no lines or members in Mississippi. T. E. Bostick is its Manager. By agreement with North Central to furnish it managerial aid as part of a loan agreement, he is Manager of North Central. He is to be Manager of Coldwater's system, if and when it is constructed.

"Woodruff has a surplus accumulated for depreciation replacements. It loans this money, and in March, 1957, agreed to lend up to $85,000.00 to North Central, taking a deed of trust therefor, and option to purchase in ten years. This agreement was supplemented by another agreement dated in June, 1957, which supplemental agreement was prompted by some action of the Rural Electrification Authority. All of these agreements have been approved by that Authority.

"Mr. Bostick did most of the negotiating to lend the money to North Central, which negotiations began in the summer of 1956. Coldwater was consulted in connection with the loan. And Mr. Bostick testified that he also talked to

certain persons or officials in the Town of Olive Branch. The agreement arrived at in connection with the loan gave Woodruff's Board of Directors the right to disapprove actions of the Board of Directors of North Central, but this right has not been exercised.

"An escrow agreement was entered into between Coldwater, Woodruff, and J. S. Love and Company, for sale of the bonds which had been authorized for the construction of the electric distribution system of that town.

"Woodruff sold to North Central some equipment and sent some of its employees on a loan basis to help install it; and certain of its employees, in like manner, helped to construct the 3-phase line complained of by Complainant. Until this suit was filed, none of Woodruff's workers had been over here, the proof showing that the 3-phase line was begun and completed in the month of July, and after the suit was brought.

"T. E. Bostick, as Manager of North Central, is to be paid a salary by North Central, but so far has not been paid anything.

"J. S. Love and Company first contacted Woodruff at Augusta, Arkansas, where its representative, Mr. Howard Ivy, was told that Woodruff had money to lend.

"The question then on this state of facts is whether or not Woodruff has engaged in business in the State of Mississippi without qualifying to do business in the manner provided by the statute. If it has so engaged in business, the process was properly served on the Secretary of State. If these acts did not constitute doing business in Mississippi, then the motion to quash should be sustained.

"There is a line of cases, notably one which was read by Mr. McClure, persuasive of Complainant's position that Woodruff was doing business in Mississippi. There is another line of cases, of which, Lee against Memphis Publishing Company is one [195 Miss. 264, 14 So.2d 351, 152 A.L.R. 1428], which the Court considers to be more in point.

"The Court was of the opinion at the conclusion of the hearing on the motion that the motion was well taken, and that Woodruff was not engaged in business in Mississippi. It is the Court's view that a much stronger case in favor of doing business in Mississippi was made out in the Lee case.

"It is the Court's view that the motion to quash the process should be sustained and is now sustained. If the Court needed authority additional to the Lee case, it finds ample support for its views on the motion in Yellow Manufacturing Acceptance Corporation v. American Oil Company, decided in 1941, and found in 191 Mississippi 757; 2 Southern 2nd 834.

"Passing to the merits of the case, the proof shows that early as the first half of 1956, Coldwater was interested in obtaining electric current for its people at a reduced rate. It sought to purchase power from Complainant at wholesale rates, but was unsuccessful in this effort.

"On May 14th, 1956, it declared its intention to issue bonds in the amount of $98,500.00, to acquire an electric distribution system, and called an election to be held June 12th, 1956. On June 15th, 1956, the Election Commission reported that the result was 131 votes for, 50 votes against. On August 7th, a Resolution was entered, approving the report and adjudicating that the election carried.

"On June 26th, 1957, it adopted a Resolution issuing the bonds, and selling them to J. S. Love and Company, and directing the construction of a distribution system.

"These bonds were dated May 1st, 1957.

"On July 23rd, 1957, Coldwater entered an order amending the June 26th Resolution, to show that the Tate County Democrat, a newspaper in which the notice of the election had been published, had a general circulation in Coldwater in 1956. And it employed T. E. Bostick as Manager of the electric distribution system, if and when it should be acquired.

"On June 26th, 1957, it entered into an agreement with North Central to operate the system as lessee and to sell it to North Central if approved by the electors; that is, the sale would be approved by the electors but there was no provision in the agreement to submit the lease therein contained to the electors.

"Complainant says that a conspiracy is an agreement to do any unlawful act or to do a lawful act by unlawful means. The Court accepts that general announcement as being true.

"The only agreement shown in the record was one that had as its purpose affording more economical power rates, and there is nothing illegal about that.

"Complainant charges conspiracy because the Coldwater Distribution system could not succeed without taking customers away from the Complainant. Competition and conspiracy are not synonymous words, nor does the one include the other. So long as it is unlawful competition, the Court said at the outset of this opinion, the Court offers protection to the Complainant. Against lawful competition it has no recourse other than to stand on its own foundation and slug it out with its competitor.

"Nor is there shown any agreement to do the lawful act of providing lower priced current by unlawful means. That irregularities may have crept into the proceedings rendering doubtful or void the means does not indicate or mean that the agreement was to be unlawful or to be unlawful or to do an unlawful act.

"The Court finds on the record that the charge of conspiracy is not sustained.

"Reverting then a minute to Woodruff, the Complainant would have the Court enjoin the sale of North Central's system to Woodruff as provided for in the agreements between those two cooperatives, unless and until the Public Service Commission of Mississippi should grant that approval. There is no indication anywhere in the record that such sale will be consummated except in a legal and lawful manner, and the Court is of the opinion that thus to enjoin Woodruff and/or North Central would be going beyond the realm of a court of conscience.

"Therefore, as to Woodruff only, at this point, the Bill of Complaint will be finally dismissed.

"There remains certain other matter to be adjudicated which by the pleadings has been brought before the Court. These matters will be considered categorically.

"The advertisement for bids for the construction of a distribution system is one of these. Section 9027 of the Mississippi Code of 1942, under which Coldwater has proceeded, provides for at least ten days of notice to bidders. The order directing the posting of notices, there being no newspaper in Coldwater, was entered on July 12th, 1957. But the conclusive testimony shows that they were actually posted on the 13th day of July, and that they invited bids up to a named hour on July 23rd.

"The Court finds that there were only nine full days of notice and not ten days as required by that statute, and that, therefore, there has been insufficient compliance with that statute as a legal basis for the awarding of a construction contract, and a contract awarded thereunder would be void. The Court has very serious doubts as to whether Section 9027 is the correct statute to be applied in this case, but that question has not been submitted to the Court. At any rate, there was not compliance with the statute under which Coldwater was proceeding.

"Complainant attacks the actions of the Board of Aldermen of Coldwater in issuing the bonds. It is the Court's opinion that Complainant may not sustain its attack on the bond issue and the proceedings with reference thereto in this suit without notice and opportunity to other taxpayers and interested parties to join in the suit, thereby putting an end to litigation.

"That part of the relief sought is denied, and the Court does not adjudicate the correctness or incorrectness of the proceedings. The Court points out that

whatever is decided on this issue, under the circumstances, would be res adjudicata only against the parties to this lawsuit, and another interested party of Coldwater—and there were fifty votes cast against the bond issue—could bring another suit tomorrow or next week on the same issues litigated here if that interested party didn't like what was decided here; and the Court prefers not to do a futile act.

"The Complainant charges, and submits to the Court for decision, that by the agreement between Coldwater and North Central, Coldwater is lending its credit to North Central in violation of the constitution. The statute clearly authorizes a lease or sale of a municipal system, that statute being Section 24 of Chapter 494 of the Laws of Mississippi of 1950. The Court has not been called upon to declare that statute unconstitutional, and it does not do so; and the Court will not find that a compliance with that statute is the lending of credit to the lessee.

"The dual position of Mr. Durley as Mayor of Coldwater and Secretary of North Central is said by Complainant to vitiate all of the actions of each as to the other. Mr. Durley was the moving spirit, as he was described to be, in the negotiations that brought about the election for the electrical system bonds and the lease agreement between the Town of Coldwater and North Central. He was not secretary of North Central when the agreement was reached and executed. He acted only as Mayor of Coldwater.

"No one charges Mr. Durley with corruption or any quality other than of honesty and integrity. In fact, the Complainant by its solicitors very definitely negatived any suspicion that it was accusing Mr. Durley of corruption or dereliction of duty. It just complained that, per·se, all is void because of his connection with the two parties. The Court has some familiarity with the law involved and has been interested in the arguments of solicitors on this point. Here, however, Mr. Durley's motive, undisputed and undenied, was to bring to his people electricity at lower rates.

"He was an official of a non-profit cooperative. There could be no increase to dividend to him as a result of the contract, for there are no dividends. There can be no per se iniquity in his activity.

"The same argument was advanced with reference to Mr. Bostick, Manager of Woodruff and of North Central. But it was pointed out that Mr. Bostick had no vote and no veto power, and his multiple connection in these matters cannot be regarded as iniquitous.

"Complaint is made that North Central is violating the law, and, therefore, infringing upon Complainant's rights by heavying up its line, the charge being that it will serve Coldwater with a more efficient line.

"North Central has its eighteen or twenty customers in Coldwater, and, as far as the record shows, has legal right to serve them. No showing is made as to why these customers are not entitled to as full, powerful, efficient and complete service as the customers of Complainant in Coldwater. In fact, on cross-examination, Mr. Hester said that he. would not say that the 3-phase line is not needed in Coldwater.

"It does not appear to the satisfaction of the Court that North Central was required to obtain a permit from the Public Service Commission to change this line to a 3-phase line.

"All relief sought as to this contention is denied.

"The June 26th agreement and contract between Coldwater and North Central is an agreement whereby, pending possible sale of the system by Coldwater to North Central, North Central would operate the system under the supervision of Coldwater. This arrangement seems to be accepted and treated by all parties to this suit as a lease agreement.

"The Court is of the opinion that under Section 24 of Chapter 494, Laws of 1950, to which reference was above made, the people of Coldwater have not been given notice, so that they might petition, if they chose, against the lease agreement, or to obtain an election on wheth-

er the agreement should be entered into. Such notice is viewed as necessary whether the transaction be a lease or a sale. The contract cannot be regarded as having been fully legally entered into until the said statute has been complied with. Because the notice was not given, the agreement is void.

"In the proposed contract undertaken to be entered into lies the only insinuation in the record that North Central will operate the system without a permit from the Public Service Commission. Decision as to whether or not it would do so is obviated by the finding just made that there is no presently existing lease agreement. Perhaps the Court is warranted, however, in saying that from all of the facts and circumstances appearing in this record, North Central would not undertake to operate this system without the Public Service Commission's permit to do so.

"It will be the Court's decree, therefore:

"1. That the Bill of Complaint is finally dismissed as to Woodruff;

"2. The motion by Defendants to dismiss is overruled.

"3. The Court does not adjudicate any of the issues as to the validity or invalidity of the bond issue or of any other proceedings relating thereto; but all rights of all persons and taxpayers in a proper suit to challenge the same are reserved to them.

"4. The proceedings advertising for bids to let the construction contracts are void.

"5. The June 26th, 1957, lease agreement between North Central and Coldwater is void.

"6. The temporary injunction was essential to maintain the status quo until trial could be had on the issues involved. Acts of Coldwater, a municipal corporation of the sovereign State of Mississippi, have been found and declared to be void. It is inconceivable that either Coldwater or North Central, possessing the corporate status, position and dignity possessed by them under the law, would

proceed on matters thus declared to be void. The Court, therefore, declines to make the injunction perpetual even in modified form.

"7. As to all other relief, the Amended Bill of Complaint is dismissed."

In the final decree the Court specifically adjudicated (1) jurisdiction, (2) specifically incorporated all of its opinion as a part of the judgment, (3) adjudicated that the proof against Woodruff did not sustain the complaint and finally dismissed as to Woodruff, (4) adjudicated the charge of conspiracy was not sustained, but in that adjudication it held that the Complainant sustained a portion of its original bill and supplemental bill and overruled the motion of Defendants to dismiss the complaint, (5) adjudicated that North Central was not required to obtain a permit from the Public Service Commission to increase its single phase line, (6) it declined to adjudicate one way or the other the validity of the issuance and sale of bonds of Coldwater in the sum of $98,500, (7) it adjudicated that the agreement made and entered into on the 26th of June, 1957 between Coldwater and North Central relative to the lease and sale of the proposed electric distribution system in Coldwater was void, (8) it adjudicated that the advertisement on the part of Coldwater for bids for construction of the electric distribution system was void for failure to give adequate notice thereof, (9) adjudicated that neither Coldwater nor North Central would violate the terms of the decree and further adjudicated that it was not necessary to make the temporary injunction permanent, and (10) that all relief prayed for in the complaint except that which was granted by the decree should be denied and that the bill of complaint and supplemental bill of complaint be dismissed. Without calling further attention to the matters considered by the Court and mentioned in its opinion and its judgment, it is sufficient to say that the opinion and the judgment, taken together, along with the allegations in the present complaint, show clearly that every allega-

tion and complaint that is made in the present bill of complaint in this court was made in the Chancery Court of Tate County, except that in this case the advertisement calling for bids was to be on December 17, 1957, which was a date happening since the rendition of the decree of the Chancery Court of Tate County.

The law of Mississippi will govern the rights of the parties and it is well settled in Mississippi that when the court has jurisdiction of the subject matter and of the parties that a judgment rendered therein is res judicata of all questions involved which could have been presented, as well as questions specifically presented by the pleadings. Love v. Mayor & Board of Aldermen of Yazoo City, 162 Miss. 65, 138 So. 600. In the case of Darrow v. Moore, 163 Miss. 705, 142 So. 447, it was held that a judgment in a former case is res judicata of questions specifically presented by the pleadings and of all questions involved which could have been presented. In the case of National Life & Accident Insurance Company v. Prather, 172 Miss. 567, 161 So. 117, it was held that a judgment in a former suit is conclusive not only as to matters actually pleaded, but as to all matters which could have been set up therein. In the case of Browne v. Merchants Company, 186 Miss. 430, 191 So. 120, it was held that a judgment or decree on the merits in a former suit between the same parties and their privies upon the same cause of action by a court of competent jurisdiction is conclusive not only as respects all matters determined, but also as respects all matters which could have properly been pleaded and may or ought to have been litigated in the former action. In the case of Fair v. Dickerson, 164 Miss. 432, 144 So. 238, it was held that a former judgment on the merits between the same parties in a court of competent jurisdiction is conclusive as to any issues litigated and determined, however erroneous, which issue is essential to a second action, though brought on a different cause of action. See also Dean v. Board of Supervisors of De Soto County, 135 Miss. 268, 99 So. 563. To the same effect is the case of Taylor v. Bell, 194 Miss. 112, 11 So. 2d 825, wherein the Court held that the former suit was res judicata of questions presented and of questions necessarily involved which could have been presented. See also Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104. Many other cases from our court could be cited, but the above are sufficient to show clearly that the matters complained of in the present complaint have already been adjudicated, or they are such that ought to have been adjudicated in the state court. The authority of the Mayor and Board of Aldermen of the Town to receive bids for the construction of an electric system was in issue in that case and should have been adjudicated. It is pending before the Supreme Court now. All questions that are raised in the present case are presently before the Supreme Court of Mississippi on appeal in such way that an adjudication by the Supreme Court will determine any issues that have not already been adjudicated by the trial court.

The question next to arise is whether or not the appeal to the Supreme Court which is still pending prevents the judgment of the trial court from being res adjudicata. This question has been answered by the Supreme Court of Mississippi. In the case of Early v. Board of Supervisors, 182 Miss. 636, 181 So. 132, the Court says an appeal with supersedeas does not vacate the judgment appealed from; it merely suspends the enforcement of the judgment pending the determination of the appeal. If on that determination the judgment is affirmed, the effect thereof is to establish or confirm the validity of the judgment from and as the *date of its rendition* in the court of original jurisdiction. See also Klaas v. Continental Southern Lines, 225 Miss. 94, 82 So.2d 705, 708. The Court said: "Clearly the judgments of the trial court were the effective adjudications of plaintiffs' rights. Their effect was suspended during appeal with supersedeas to the Supreme Court, but our judgment

simply affirmed the validity of the judgments of the circuit court." See also Stone v. McKay Plumbing Co., 200 Miss. 792, 26 So.2d 349, 30 So.2d 91; Lyle Cashion Company v. McKendrick, 227 Miss. 894, 87 So.2d 289.

◼ The effect of these decisions is that the judgment in the former suit is res adjudicata of everything complained of in the present lawsuit or is pending before the Supreme Court and that the appeal to the Supreme Court of Mississippi does not prevent it from being res adjudicata. The appeal simply supersedes the enforcement of the judgment. The allegations in the complaint as to the contracts existing between Coldwater and the Power Company relative to furnishing electricity for the lighting of the streets and the pumping station were alleged in the state court and should have been litigated there. Jurisdiction for declaratory judgment would not be present with reference to those contracts or with reference to any other matter alleged in the complaint. The allegation as to a taxpayer's suit could have and should have been alleged in the bill of complaint in the state court, if it were not. The opinion refers to the fact that the Complainant was a taxpayer in the Town and from this it could be assumed that the question was raised, but under the law, as hereinbefore announced, whether it was raised or not, it should have and could have been raised in that suit and, therefore, the issue is res adjudicata. In the case it will be seen that the parties are the same, the subject matter is the same, the relief sought is the same. The state court had jurisdiction, and the cause of action is the same, except to the extent that Plaintiff in the present suit sought an injunction against the Town receiving bids on December 17, 1957 for the construction of the electric system. December 17, 1957 is now past and that issue is moot. Under the law above cited, the issues in the case are res adjudicata.

◼ The Plaintiff contends that the state court action was not a taxpayers' suit since others were not invited to join, and further contends in the present suit that independent of the taxpayers' interest, it has independent, disconnected interests other than as a taxpayer. The opinion of the Court hereinbefore quoted shows clearly that all these matters were considered by that court, and as to those contentions the bill was dismissed. All the allegations with reference to the issuance of the bonds and the sale of the bonds were before the Court of Chancery in the state, but regardless of that, the sale and issue of the bonds in the sum of $98,500 is now moot. They have been canceled by resolution of the Mayor and Board of Aldermen of Coldwater and are void and of no effect, and a declaratory judgment may be entered in this case to that effect.

◼ The contracts with reference to furnishing power for the water system of the town and street lights for the town, made with Coldwater, are valid contracts and enforcible contracts for two reasons. One is the matter was litigated and at issue in the state suits and should have been adjudicated to be valid contracts. There appears to be no genuine issue as to the validity of the contracts in the present suit, except the Defendants now raise the contention that the contracts are void because Veazey was a member of the Board of Aldermen when these contracts were entered into with the Mississippi Power & Light Company. There is no merit in this contention, as will be stated more fully hereinafter. This issue could have and should have been adjudicated by the judgment of the state court, but if it was not definitely so adjudicated, then a declaratory judgment may be entered declaring those contracts to be valid and enforcible.

◼ There is in issue in this case and was in issue in the state case, towit: The validity of the election held in the town of Coldwater because of the failure of the Mayor and Board of Aldermen to adjudicate at the time of ordering the election and before the election was held the fact that the newspaper in which the notice of election was published had a general circulation in the town of Cold-

water. The Chancellor declined to pass on the validity of that issue and this court, likewise, will decline to pass on the issue. However, this court is of the opinion that it presents a legal question involving some difficulty. The adjudication was not made by the Board until after the election. After the bonds had been issued, the town then undertook to make the adjudication and spread a finding upon its minutes, but it is doubtful if that cured the defect. See West v. Town of Waynesboro, 152 Miss. 443, 119 So. 809. However, I do not pass upon this question for the reason that comity requires that the court first having jurisdiction of the question, the state court, should pass upon it. This is one of those cases where that comity should be shown and I do so without any purpose on the part of this court to intimate how the state court should decide the question. It may be that it could be inferred that the state trial court in effect passed upon it. In its concluding part of the opinion that court stated that all relief prayed for was denied except as therein granted.

■ There can be no question but what the town of Coldwater has the right under the law of Mississippi to acquire or construct a municipal electric distribution system, but its powers are circumscribed by statute and in order to acquire or construct such system it must act within the powers granted to it by law. All the reasons, with few exceptions, alleged in the bill of complaint herein against its conduct were alleged in the complaint in the state court.

■ The Plaintiff owns a non-exclusive franchise for the generation and distribution of electricity in the town of Coldwater. Coldwater granted this franchise to the Plaintiff about November 11, 1941 in a standard form of non-exclusive franchise, which it has held since that date. In addition thereto, it acquired a franchise right from the Mississippi Public Service Commission under the "Grandfather clause", as authorized by Chapter 372 of the Mississippi Laws of 1956. The Defendants deny the validity of this franchise and have filed a cross complaint to cancel the franchise of the Plaintiff. Under the authority hereinbefore cited, this court is of the opinion that that issue is res adjudicata by virtue of the state judgment and is no longer open to question here. The Plaintiff in that case alleged it held a valid franchise and it was not disputed in that case, but it should have been and it is now too late to raise it. Defendants allege the franchise was void because F. F. Veazey, Sr. was a member of the Board of Aldermen of the town of Coldwater when the franchise was granted. It is a fact and I find as a fact that he was a member of the Board of Aldermen, but further find that the interest that he owned was so infinitesimal as compared to the entire value of the properties of the Plaintiff that it would not rise to the dignity of a conflicting interest. He owned fifty shares of preferred stock. There were at that time 69,000 shares of preferred stock of the value of $100 per share outstanding in the hands of the public and 35,000 shares of second preferred stock outstanding. He owned no common stock and had no voting rights and never at any time participated in any of the stockholder meetings, or in any control of the corporation. There were four other members of the Board, all of whom voted for the franchise, and Veazey's vote could not have changed the result. Moreover, in September, 1946 the town amended the franchise so as to collect 2% of the receipts of the Mississippi Power and Light Company from the sale of electric service in the town. That was accepted by the Mississippi Power & Light Company and it has paid that 2% on the receipts of sales. The town was guilty of laches in not raising the question prior to this lawsuit that would estop it from now contesting the validity of the franchise. If it did not know that Veazey owned the fifty shares of stock until this date, then the answer is that it was guilty of laches in not knowing. The franchise is a valid franchise and comity does not prevent this court from so declaring.

It is not clear in the record whether the validity was before the state court or not, and the Plaintiff is therefore entitled to a declaratory judgment on that issue. Having reached the conclusion that the franchise is a valid franchise renders it unnecessary that further parties be brought into the action. The motion of Mississippi Power & Light Company to bring in indispensable parties will be overruled. Mississippi Power & Light Company avers that it issued certain bonds secured by a mortgage on the franchise and other properties in favor of a mortgagee and trustees and that such mortgagee and trustees are indispensable parties for a hearing on the cross bill. This contention would be true before the court could declare the franchise invalid. However, since the court finds the franchise valid, then these parties are not indispensable.

A declaratory judgment may be entered declaring the contracts with the Town with reference to furnishing power for the pumping station and street lighting to be valid; declaring the franchise a valid franchise; and declaring the $98,500 bond issue void and canceled.

The Court has jurisdiction of the cause of action. On the face of the bill a controversy is shown to exist between citizens of different states and more than $3,000 involved, and that there is a genuine issue to be determined by the Court. The temporary restraining order was properly granted because it was necessary to hear the entire controversy before a just determination could be made of the controversy between the parties, but the prayer for a temporary injunction and for a permanent injunction will be denied without prejudice to the rights of the Plaintiff to seek redress in any court of competent jurisdiction if acts committed in the future inconsistent with the law should be undertaken by any of the Defendants in this case. The main issues in this present controversy were raised in the controversy between the same parties in the state court, which has heretofore been stated by this court,

and are res adjudicata of practically every issue contained herein.

The temporary injunction to prevent the reception of bids on December 17, 1957 prevented such action and that question is now moot. There was strong probable cause and justification for issuing the temporary injunction, since the matters were of such serious import. The Cross Bill will be dismissed for the reasons hereinbefore stated. Costs accruing at the instance of the Plaintiff will be taxed against Plaintiff and costs accruing at the instance of Defendants will be taxed against Defendants.

Order may be drawn in accord herewith.